GOODALE & a., *Ex'rs*, v. MOONEY & a.

" I place the remainder of my property in the hands of my executors, to be distributed by them after my decease, among my relatives, and for benevolent objects, in such sums as in their judgment shall be for the best," held to be a valid bequest in trust.

BILL IN EQUITY, by the executors of the will of John Mooney, deceased, for the advice and direction of the court in regard to the following clause in the will: " 34. I place the remainder of my property in the hands of my executors, to be distributed by them after my decease, among my relatives, and for benevolent objects, in such sums as in their judgment shall be for the best. In case the first named executor, John H. Goodale, shall find himself in need of means, he can take from the residue above named the sum of three thousand dollars."

The bill alleges that the testator left no lineal heirs, and no widow; that his heirs at law are believed to be children of deceased brothers and a sister; that his wife was Susan Mooney, who died before the testator; that the testator devised by his will a large amount of property to various charitable and religious institutions, and to many of his heirs at law, which specific legacies have all been paid; that after paying the same, there is a balance in the hands of the plaintiffs amounting to about $25,000; that this balance was contemplated by the testator, and provided for in the above clause of his will; that Goodale having found himself in in need of means, the sum of three thousand dollars has been paid to him from the residue above named; that claims have been made on the plaintiffs by various persons claiming to be interested in the estate of the deceased;—and the plaintiffs wish to ascertain their legal duty in the premises, as executors and trustees, under the will and as trustees under the 34th clause thereof, in the following particulars:

1. Was it the intention of the testator, by the residuary clause, to create a trust in the plaintiffs?

2. If such was his intention, is the trust sufficiently definite to be carried into effect, and to authorize the plaintiffs, either as executors or trustees, to distribute among the relatives of the deceased and for benevolent objects, in such sums as in their judgment shall be for the best, the above remainder of the estate?

3. Does the residuary clause authorize the distribution of the balance of the estate to only one of the objects named in said clause? and if to only one, which one?

4. If a trust is created in favor of relatives, who are to be regarded as relatives under the will, those related by affinity, or by blood, or both classes?

5. If a trust is authorized in favor of benevolent objects, are benevolent objects to be limited to charitable objects only? and if not, what classes of objects are embraced in the phrase "benevolent objects"?

6. In case the trust, as stated in the residuary clause, is not sufficiently definite to be carried into effect, does a trust result, by implication of law, to the next of kin of the testator?

7. If such a trust results, are the next of kin who are legatees in the will legally entitled to a share of this resultant trust equally with those not named in the will?

8. Is parol evidence admissible, in aid of the construction of the will, as to what the testator meant by benevolent objects and by relatives, or for any other purpose?

The heirs at law claim that the residuary clause of the will is void for uncertainty, and that the balance in the hands of the executors belongs to them.

The will makes a part of the case, and may be referred to by either party.

*Pike & Parsons*, for the plaintiffs. I. The terms of the residuary bequest clearly manifest an intention that it shall be taken in trust by the executors.

II. The trust is sufficiently definite and certain to be carried into effect. It places the residue of the estate in the hands of the executors, and directs them to distribute it among the relatives of the deceased and to benevolent objects, in such sums as in their judgment may be for the best. It is legally definite as to the objects named in the residuary clause. It is clear the testator intended to make the plaintiffs trustees of the residuary part of the estate, to be distributed by them in their discretion, as named in the 34th item of his will. A testator has the right to make a bequest to his executors, to be distributed by them in their discretion, provided the objects of the bequest are sufficiently certain and definite. *Malim* v. *Keighley*, 2 Ves., Jr., 333; 1 Red. Wills (ed. 1864) 684. When such discretion has been exercised in good faith and according to the best judgment of the executors, it is not subject to the revision of the court. *The Hawes Place Cong'l Soc.* v. *Hawes Fund*, 5 Cush. 454.

The bequest to the relatives of the testator, without giving any names, is good. The English courts for a very long time, and the American courts from their earliest history, have uniformly held that a bequest to the " children " of the testator, or those of a third person, or to the " cousins," " nephews," " nieces," " the family," " descendants," " next of kin," " next of kin on father's or mother's side," " next of kin in male line," " next of kin by way of heirship," " issue," as well as to the " connections," " the relations," or " relatives," is good. 2 Red. Wills, *c.* 13, *ss.* ii, iii, v; 2 Jar. Wills 45–48. To avoid the failure of a bequest to " relatives " or " relations," on the ground that it might include such an indefinite multitude that such an attempt to dispose of property must wholly fail by reason of uncertainty, the English courts have restrained these terms to such persons only as come within the statute of distribution, and would take the estate in case of intestacy. 2 Jar. Wills 45, and cases cited; 2 Red. Wills, *c.* 47, *ss.* 30, 56; *Harding* v. *Glyn*, 1 Atk. 469, and cases cited; *Spring* v. *Biles*, 1 T. R. 435, note. Such is the general rule in the courts of this country, and it is certainly the doctrine in this state. 2 Red. Wills, *c.* 47, *ss.* 30, 56; *Varrell* v. *Wendell*, 20 N. H. 431. But we ask the court to examine the will, and see if a just construction of it modifies this rule; for the rule is not without exceptions, and may be controlled by the will.

Notwithstanding the above construction limiting relations to such as can take under the statute of distribution, yet the right to distribute, as they may deem best, among such as would be entitled to distributive shares, remains to the executors, according to the intention of the will under which the claim is made, and not according to the statute of distribution. *Harding* v. *Glyn*, 1 Atk. 469, note 1.

III. The remaining question is, whether the court will, under the law pertaining to such subjects, permit the testator's executors to carry out his benevolent purpose.

As to the clause "and for benevolent objects," these questions are presented: 1. Would the bequest be good if it had been made "for charitable objects," and sufficiently definite to be carried into effect? 2. If so, is not the phrase "for benevolent objects" legally equivalent to the phrase "for charitable objects"?—and, 3. If there be a difference in meaning between the two words, why should not, upon principle, a bequest for benevolent objects be upheld, as well as one to charitable?

As to the first question, it seems to be fully settled that a bequest in trust for charitable purposes is good. There is a long and almost unbroken line of decisions, reaching back to very early times, sustaining such gifts. The rule in regard to them should be flexible. The enforcement of charitable uses should not be limited by any narrow or stated formula. It should expand with the advancement of civilization and the daily increasing needs of men. *Vidal* v. *Girard's Executors*, 2 How. 126, 196; *Saltonstall* v. *Sanders*, 11 Allen 446.

As to the second point: We urge that the words "for benevolent objects" should be construed to mean the same as "for charitable objects." This question, we are aware, has recently come before the court of Massachusetts, and that the holding has been adverse to the validity of such a bequest. *Chamberlain* v. *Stearns*, 111 Mass. 267. This decision follows that of *James* v. *Allen*, 3 Mer. 17.

But the court in the same case said, "It has been held by this court, and by the House of Lords, that 'benevolent,' when coupled with 'charitable' or any equivalent word, or used in such connection * * * as to manifest an intent to make it synonymous with charitable, might have effect according to that intent." *Saltonstall* v. *Sanders*, 11 Allen 446; *Rotch* v. *Emerson*, 105 Mass. 431, 434. We earnestly insist that this holding in Massachusetts is too narrow, and has no good reason or stable foundation to rest upon. It is not consistent with the recent current of authority on this question. It seems to us that it has failed duly to consider the changing and changed meanings of words. Assuming that a court of chancery will not uphold a gift unless it be for charitable purposes, it is for the court to say, in giving construction to the will, whether the gift is for such purpose. It cannot be held that it is necessary to use the word charitable. If it appear to the court, from any source properly open to them, that such was the testator's intention, it must be sufficient. If there be two meanings to a word, one of which will effectuate and the other defeat the testator's object, the court will select the former. *Whicker* v. *Hume*, 7 H. L. Cas. 154; *Saltonstall* v. *Sanders, supra;* 2 Per. Tr., s. 709. Benevolent, in its popular sense and use, is synonymous with charitable. The testator evidently used the word "benev-

olent " in its popular sense, meaning well-doing and not well-wishing. It is apparent he intended to do well for certain objects, and not simply to wish them well. This is plain from the fact that he placed $25,000 in trust for that purpose.

The question to be decided is, what this testator meant by the word "benevolent;" not what the word means etymologically, or as used in any other connection whatever. It cannot be inferred that he used this word with a meaning which would defeat his intention, rather than with a meaning which would carry out his purpose. We submit that ninety-nine persons out of every hundred who use the word benevolent, use it as synonymous with charitable. And this is the great fact, known to the court in this case, which we urge is proper for them to consider, and which should influence them in the determination of the question here presented.

We further suggest that it is apparent from the will in what sense the testator used the word benevolent. All his specific legacies are to individuals, his relatives. and to the Tilton and Northfield Congregational Society, the New Hampshire Home Missionary Society, the New Hampshire Bible Society, the Foreign Missionary Society, the New Hampshire Ministers' Widows' Fund, and New Hampshire Conference Seminary at Tilton,—all of which must be regarded as charitable objects.

Even in Massachusetts, prior to the decision in *Chamberlain* v. *Stearns*, above cited, it was understood it had been construed by the court that the word "benevolent" meant the same thing as charitable in the law, and trusts for benevolent or charitable purposes had been carried into effect; that the word benevolent had been so often used in the constitution of that state, and in so many general and private statutes, as equivalent to and synonymous with the word "charity," that it had come to have that meaning in the law. 2 Per. Tr., s. 712; *Miller* v. *Rowan*, 5 Cl. & Fin. 99; *Jemmit* v. *Verril*, Amb. 585, *n.; Hill* v. *Burns*, 2 Wils. & Sh. 80; *Saltonstall* v. *Sanders*, 11 Allen 465; *Johnson* v. *Swann*, 3 Mad. 457.

As to the third proposition, we submit there should be no distinction between gifts for benevolent objects and gifts for charitable objects. We do not understand that the court in this state has held adversely on this question. For reasons above stated, and for others which seem obvious to us, there should not be a distinction between a gift to charitable and one to benevolent objects. Upon principle, there can be none. If there be any distinction between the meanings of the words, it is one without any practical difference. The right of a testator to give for benevolent objects, should not be denied. A bequest for such objects should be upheld as much as those for charitable purposes.

*W. T. & H. F. Norris,* for the defendants.

SMITH, J. 1. The intention of the testator, by the residuary clause in his will, was to create a trust in the plaintiffs. His lan-

guage is, " I place the remainder of my property in the hands of my executors to be distributed," &c. His intention, distinctly announced, is, that the remainder of his estate entrusted to them shall be distributed for certain declared purposes. *Erickson* v. *Willard,* 1 N. H. 217 ; 1 Per. Tr., *ss.* 112–123 ; 1 Jar. Wills 385–408.

2. Is the trust sufficiently definite to be carried into effect? The rule for determining whether the words of a will create a trust or not is,—first, the words must be imperative ; second, the subject must be certain ; and thirdly, the object must be as certain as the subject. *Wright* v. *Atkyns,* 1 T. & R. 157 ; *Wood* v. *Cox,* 2 Myl. & Cr. 684 ; *Pope* v. *Pope,* 10 Sim. 1 ; *Knight* v. *Knight,* 3 Beav. 148 ; 1 Per. Tr., *s.* 114, *n.* In this case these conditions are complied with. The words are imperative. The testator places his property in the hands of his executors with directions to distribute the same. The subject is the remainder of his estate, and is certain. The object, so far as his relatives are made the distributees, is certain.

3. But the principal question is, whether the devise in trust " for benevolent objects " creates a trust for charitable uses. Is the word " benevolent," as used in the residuary clause of the will, synonymous with "charitable"? These words are classed as synonymous, but do not always express the same meaning. Many charitable institutions may properly be called benevolent, but every object of benevolence is not an object of charity. *James* v. *Allen,* 3 Mer. 17. It has been held that the word " benevolent" of itself, without anything in the context to qualify or restrict its ordinary meaning, cannot be deemed charitable in the technical and legal sense *( Chamberlain* v. *Stearns,* 111 Mass. 267) ; but it is not necessary to inquire what the law on that point is in this state.

The statute 43 Eliz., *c.* 4 (A. D. 1601), contains an enumeration of charitable objects, all of which have since been considered charitable : also many other uses not named within the strict letter of the statute, but which come within its spirit. 2 Per. Tr., *s.* 692. It is said that no bequests are deemed within the authority of chancery, and capable of being established and regulated by a court of chancery, except bequests for those purposes which the statute enumerates as charitable, or which by analogy come within its spirit and intendment. 2 Sto. Eq. Jur., *s.* 1155. Whether this statute has ever been adopted in this state has not been judicially determined, and for the purposes of this case it is not important to inquire, for courts of equity have original and inherent jurisdiction over charities, independent of the statute. 2 Per. Tr., *s.* 694, and authorities cited. "A trust, to be valid, must be under the control of a court, and the trust must be of such a nature that its administration can be reviewed. A· trust for charity must, therefore, be governed by some principles that are familiar to the court.

These principles have grown up in relation to the words 'charity' and a 'charitable use,' and to descriptions that come within them: but there are no rules that can be applied to mere benevolence,. liberality, or generosity, or to any words that give a discretion and power to the trustees to apply the funds to any purposes within the whole range of human action." 2 Per. Tr., *s.* 711. Whether a more liberal rule prevails in this state we need now inquire.

In the case of a charitable gift above all others, it is often said the construction should be such as will preserve rather than destroy the gift. *Saltonstall* v. *Sanders*, 11 Allen 446, 455 ; *Whicker* v. *Hume*, 7 H. L. Cas. 154. In many of the cases the word "benevolent" has been coupled with "charitable" or some equivalent. word, or has been mentioned in connection with such public institutions as to show an intent to make it synonymous with charitable. *Saltonstall* v. *Sanders*, 11 Allen 446 ; *Roch* v. *Emerson*, 105 Mass. 431 ; *Hill* v. *Burns*, 2 Wils. & Sh. 80 ; *Crichton* v. *Grierson*, 3 Bligh. N. R. 424—*S. C.*, 3 Wils. & Sh. 329 ; *Ewen* v. *Bannerman*, 2 Dow. & C. 74—*S. C.*, 4 Wils. & Sh. 346 ; *Miller* v. *Rowan*, 5 Cl. & F. 99—*S. C.*, 2 Shaw & McL. 866 ; 2 Per. Tr., *s.* 711 *et seq. ;* 1 Jar. Wills 211–215. In other cases, where a bequest for "benevolent" purposes contained no qualifying or explanatory words, the bequest has been held void for uncertainty.. *James* v. *Allen*, 3 Mer. 17 ; *Morice* v. *Bishop of Durham*, 9 Ves.. 399—*S. C.*, 10 Ves. 522 ; *Attorney-General* v. *Haberdashers' Co.,*. 1 Myl. & K. 420 ; *Nash* v. *Morley*, 5 Beav. 177 ; *Chamberlain* v. *Stearns*, 111 Mass. 267. The decisions go upon the ground that the testator intended the word "benevolent" to be understood according to the technical construction which had been put upon it. by the courts. But in many of the recent English cases a more reasonable construction in regard to technical language has been. adopted. In *Jenkins* v. *Hughes*, 8 H. L. Cas. 571, the court said words of a technical kind are not necessarily to receive a technical meaning. In *Young* v. *Robertson*, 4 Macq. H. L. Cas. 314, 325, it was said the primary duty of a court, in the interpretation of wills, is to give each word employed, if it can with propriety receive it, the natural and ordinary meaning which it has in the vocabulary of ordinary life, and not to give words employed in that vocabulary an artificial, secondary, or technical meaning. In *Hall* v. *Warren*, 9 H. L. Cas. 420, it is laid down that in construing the autograph will of an illiterate man the meaning of techinal language may be disregarded: but no word which has a clear and definite operation can be struck out. Judge Redfield, in commenting upon these cases, says they " evince a determination not to allow technical rules of construction to overbear and break down all the better instincts. and involuntary sentiments of common-sense, and the common experience of mankind, even in the construction of wills, and we hail the omen with no slight gratification." 1 Red. Wills (ed. 1864) 429, *n.;* *Perkins* v. *Mathes*, 49 N. H. 107, 110 ; *Trustees* v. *Peaslee*, 15 N..

H. 319; *Tilton* v. *Tilton*, 32 N. H. 263; *Goodhue* v. *Clark*, 37 N. H. 525; *Mathes* v. *Smart*, 51 N. H. 438, 440; 1 Red. Wills 426, 442; *Stokes* v. *Salomons*, 9 Hare 75; *Hart* v. *Tulk*, 2 De G. M. & G. 311.

We are very much inclined to doubt whether the construing of a will according to technical rules does not result quite as often in defeating as in promoting the testator's intent. In this state the intention of the parties to a written instrument is determined, not by any technical rules of construction, but like a question of fact, by the weight of competent evidence. No technical rules of construction applicable to all cases can be established. The intention in each case is determined by the evidence bearing on the case. *Cole* v. *Lake Co.*, 54 N. H. 242; *Rice* v. *Society*, 56 N. H. 191, 197; *Houghton* v. *Pattee*, 58 N. H. 326; *Morse* v. *Morse*, 58 N. H. 391; *Brown* v. *Bartlett*, 58 N. H. 511; *Wilkins* v. *Ordway*, 59 N. H. 378.

In this case, there is nothing in the thirty-fourth clause of the will which indicates that the testator did not intend by the word "benevolent," objects which are technically known as "charitable." The clause reads,—"I place the remainder of my property in the hands of my executors, to be distributed by them after my decease among my relatives, and for benevolent objects, in such sums as in their judgment shall be for the best. In case the first named executor, John H. Goodale, shall find himself in need of means, he can take from the residue above named the sum of three thousand dollars." It may be said that it is quite probable the testator did not know there is any legal difference between the words "charitable" and "benevolent." Most persons probably use the words indifferently, and as meaning the same thing. If it had occurred to the testator to look in the dictionary, he would have found the words classed as synonymous. (See Web. Dic., "charitable," "charity.") In its popular sense, by a benevolent person is understood one who emphasizes his good wishes by well-doing.

Looking to the testator's circumstances and the rest of the will for light, it appears that he died leaving no lineal heirs or widow; that he devised to various charitable and religious institutions, and to many of his heirs at law, and to heirs of his deceased wife, legacies in money to the amount of $38,200; also, that he made specific legacies of personal property, and specifically devised his real estate. The amount to be distributed under the clause in question is about $25,000. In disposing of this estate, amounting probably to $75,000, the disposition made of his estate in other parts of his will furnishes some evidence of what was his intent in the residuary clause. He bequeathed to the Tilton and Northfield Congregational Society $1,000; to the New Hampshire Home Missionary Society $2,000; to the New Hampshire Bible Society $500; to the Foreign Missionary Society $500; to the New Hampshire Ministers' Widows' Society $1,000; to the New Hampshire Conference Seminary at Tilton $500—total, $5,500;

all of which must be regarded as charitable objects. The balance of the sum of $38,200 is bequeathed mostly to relatives by blood or marriage. Some small sums, in the aggregate not large, are given to persons not denominated in the will as relatives,—as, for example, $300 to Mrs. Ruth Cox, of Holderness, a woman then upwards of one hundred years of age, the apparent object of the bequest being for her relief and comfort in her extreme old age, and hence within the line of charitable gifts. His intent as thus disclosed appears to have been to distribute his property to his relatives and for charitable objects; and we think it is a fair construction of the residuary clause, to hold that the trustees might distribute the remainder of his estate to such relatives within the statute of distributions (*Varrell* v. *Wendell*, 20 N. H. 431) as are needy, and to such charitable objects as he gave specific legacies to. The use of the word "relatives" excludes all others as individuals. In authorizing his executors to dispose of the remainder to the distributees in such sums as in their judgment shall be best, he evidently had in view the necessities of his relatives, as well as the comparative claims for benevolent support of charitable institutions. The coupling of the provision in the same clause, that his son-in-law might take $3,000 of the residue in case of need, gives additional strength to this construction. The use of the conjunction "and" in the clause "among my relatives and for benevolent objects," shows that the testator did not intend to give this large sum wholly to his relatives, nor wholly to charitable institutions, but to both objects in such sums as the executors should judge best.

On the question whether a bequest for a benevolent purpose, not charitable in the technical sense, would be void, we express no opinion.

4. The question whether parol evidence is admissible for any purpose in giving construction to the will, will be considered when such evidence is produced.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.