Carroll, ⎰
Dec., 1899. ⎱

## SNOW, *Trustee, v.* DURGIN & *a.*

Where a will provides that the income of a residuary estate shall be applied for ten years "for the relief of the most destitute of my relatives, not to extend beyond the children of my brothers and sisters and their families, after which time the principal to be divided between them" and the children of persons named, the relatives entitled to share are all those survivors of the testator not more remotely connected with him than nephews and nieces.

Under such clause the legacies vested at the death of the testator, and the estate should be divided into as many parts as there were relatives within the specified degree and children of the persons named who survived him, one share to be paid to each distributee now living and the representatives of such as have died in the meantime.

BILL IN EQUITY, for instruction in the execution of a trust. Josiah Thurston died testate, November 13, 1886, leaving one sister, seventeen nephews and nieces (eleven of whom were children of deceased brothers and sisters), and a large number of grandnephews and grandnieces, of whom two were children of a deceased child of the surviving sister, five were children of nephews and nieces who died before the date of the will, and the others were children of surviving nephews and nieces. Sarah A. Towle, a person "brought up" by Josiah as stated in his will, died between the date of the will and his death, leaving one child who survived him. Nathaniel H. Thurston — who, as the testator states in the will, was "formerly in my family and died in my house in April, 1875" — left three children who survived Josiah. Neither of the last-named persons was an heir of Josiah. He bequeathed $100 to his sister, $25 to each of his nephews and nieces, $500 to each of Thurston's children, $500 to Thurston's widow during life and then to his children, and $5,000 to Sarah A. Towle's child. He also gave $5,000 and some articles of personal property to Mrs. Towle, but after her death he revoked the legacy. He gave nothing to any of his grandnephews and grandnieces. The residuary clause of the will is as follows: "As to all the rest and residue of my estate, real, personal, or mixed, wherever found or situated, it is my will that the same be sold by my executors, as above provided, and the proceeds safely invested, and the interest of the same be applied by my executors for the term of ten years for the relief of the most destitute of my relatives, not to extend beyond the children of my brothers and sisters and their families, after which time the principal to be equally divided between them, in-

cluding the children of Nathaniel H. Thurston, deceased, and the children of Sarah A. Towle."

Instruction is asked in reference to the division of the residue of the estate.

*Worcester, Gafney & Snow,* for the plaintiff, and nephews and nieces of the testator.

*Foster & Hersey* (of Maine) and *John C. L. Wood,* for Arthur H. Kenison and others.

*Josiah W. Thurston, pro se,* and as guardian *ad litem* of minor, and agent of non-resident, defendants.

CHASE, J.   By the terms of the will, the income of the residue of the estate, for the term of ten years, was to be applied for the relief of the most destitute of the testator's relatives, not to extend beyond the children of his brothers and sisters and their families, and then the principal was to be "equally divided between them, including the children of Nathaniel H. Thurston, deceased, and the children of Sarah A. Towle."   In respect to the income, it has already been decided that a charitable trust was created, the beneficiaries of which were limited to such of the testator's relatives as were not more remote than nephews and nieces and their families.   *Gafney* v. *Kenison,* 64 N. H. 354.   The time for the distribution of the principal of the fund having arrived, the question arises, who are entitled to shares?   This depends upon the intention of the testator expressed by the pronoun "them" and the words following it.   That this pronoun was designed to take the place of the noun "relatives," in some sense of the word, is apparent.   The question is, what was the sense intended?

In its broadest sense, "relatives" means all persons connected with another by blood or affinity, however remote the connection. There is, however, a limit beyond which these ties are not sufficiently strong to influence a person in making a disposition of property.   This fact is recognized in the laws of descent and distribution by the limitation of the persons who take under them to the next of kin, if there is no child, father, mother, brother, or sister.   When the testator first used the word in his will, he expressly provided that it should not extend beyond the children of his brothers and sisters and their families.   It thus appears that he used it in a limited sense.

The word "relatives" and the words "next of kin" have been used in wills to designate the next of kin according to the statute of distribution.   *Varrell* v. *Wendell,* 20 N. H. 431; *Pinkham* v.

*Blair*, 57 N. H. 226; *Goodale* v. *Mooney*, 60 N. H. 528, 536.  But " relatives," or its substitute " them," was not so used here; for it included within its meaning "the children of Nathaniel H. Thurston and the children of Sarah A. Towle"— persons who were not next of kin.

Several independent provisions of the will uniformly tend to show that the testator did not intend to include in these terms any persons whose connection with him was more remote than that of children of his nearest of kin, or those who were nearest to him by reason of association and affection.   Relatives more remotely connected were not to be relieved from the income.   A legacy of $25 was given to each of his nephews and nieces, but no legacy was given to any grandnephew or grandniece, although there were many of them, and some whose parents had died before the date of the will.   He "brought up" Mrs. Towle.   He gave her $5,000, and her child $5,000 — much larger legacies than he gave to any of his kin.   Thurston had lived in his family and died at his house. He gave each of Thurston's children a liberal legacy.   Evidently his association with these persons had been such that they were very near to him in affection; and yet in respect to them and their descendants he did not extend his gifts beyond their children. This evidence seems to be decisive of the point as to the limitation which the testator placed upon the term "relatives" and its representative.

It may be said that the connection in which the pronoun " them " stands shows that it was intended to supply the place of the words " the most destitute of my relatives, not to extend beyond the children of my brothers and sisters and their families."   The testator attempted to accomplish two objects by the provision of the will in which these words occur: (1) The application of the income of the residue of his property for a term of years to the relief of destitute relatives, and (2) the ultimate division of the principal.   As his purpose was not to distribute the income among his relatives or the most destitute of them in fixed proportions, but to have it applied to their relief according to their needs, it was necessary to create a trust to accomplish the object.   Accordingly he gave the possession and control of the property to his executors for the term of ten years, accompanied with authority to determine who were relatively the most destitute of his relatives, to what extent they should severally be relieved, and whether the relief should be furnished in money or otherwise.   *Gafney* v. *Kenison*, 64 N. H. 354, 357.   His plan in reference to the principal was radically different.   He divided that himself, not according to the degree of destitution of the relatives, but equally.   A trust in favor of the most destitute of a class can be executed, for the trustee has

authority to determine, subject to the supervision of a court of equity, who the beneficiaries shall be. *Goodale* v. *Mooney*, 60 N. H. 528. In the case of an absolute gift to such persons, the question would be, where the dividing line between the destitute and the most destitute is; and it would be a question of fact, to be determined like other questions of fact. It is extremely improbable that a testator would create such a question for decision, even if he had the power. Moreover, if destitution were to be taken into consideration in making a division, it would naturally conflict with the principle of equality. As in the appropriation of the income in this case, the division would be likely to be unequal and according to the respective needs of the legatees. For an example, see *Goodale* v. *Mooney*, *supra*. But there is direct evidence that the testator did not make destitution a condition of the right to share in the principal. He did not impose that condition in respect to the children of Thurston and Mrs. Towle. No reason is apparent why he should not have done so if he intended to do so in the case of his relatives. The conclusion is that "them" was intended to refer to relatives not more remotely connected with the testator than nephews and nieces, and to include the children of the persons particularly named.

The question, when these legacies vested, remains. Was it at the death of the testator, or at the expiration of the term during which the trust was to continue? A will ordinarily speaks as of the time of the testator's death. "My relatives" are relatives who were living at that time. *Langmaid* v. *Hurd*, 64 N. H. 526. The most destitute of these were to be relieved from the income for a time, and then all of them (in the sense above indicated), including the children of the persons particularly named, were to share equally in the principal. There seems to be no room for doubt in respect to the testator's intention on this point. It is also evident that the legacy was given to the individuals described by the terms "relatives" and "children" as classes, and consequently that it goes to the survivors of the classes named. *Hall* v. *Smith*, 61 N. H. 144; *Campbell* v. *Clark*, 64 N. H. 328; *Brewster* v. *Mack*, 69 N. H. 52. In such case the legacy vests in the survivors immediately upon the testator's decease. *Kennard* v. *Kennard*, 63 N. H. 303; *Stevens* v. *Douglass*, 68 N. H. 209; *Thyng* v. *Lane*, 69 N. H. 403.

In *Pinkham* v. *Blair*, 57 N. H. 226, the testator devised his estate to his two daughters in fee, and provided that if either should die without issue the survivor should have the share of the one so dying; and if both should die without issue, the testator's son should have the use of the property during life, and it should then go to the heirs of his body and their heirs and assigns, or in the event of his dying without issue, to the testator's next of kin. It

was found that the testator's intention was that the persons who were his next of kin at the time of the death of the survivor of his children should take the property in case all of the children died without issue. One reason given for the decision was that "it would be . . . extremely absurd to suppose the testator could possibly have intended to give the property over after the death of his children without issue, to those very children to whom he had previously given it in fee." A similar provision in a will was construed in the same way upon like grounds in *Hardy* v. *Gage*, 66 N. H. 552. But aside from being authorities upon the point that the intention of the testator is to govern, they afford no aid in the decision of this case. Here, there was no intermediate conditional estate, but the fund and its income were unconditionally disposed of at the same time, and by words which were to be applied to the circumstances as they existed at the time of the testator's decease.

To make a division of the residue according to these views, it should be divided into as many equal parts as there were persons living at the decease of the testator who were his sister, nephews and nieces, and the children of Nathaniel H. Thurston and Sarah A. Towle; and each of such persons now living should have one part; and if any have died in the meantime, their representatives should have their parts respectively.

*Case discharged.*

WALLACE, J., did not sit: the others concurred.