## LEHNHOFF, Appellant, v. THEINE.

### Division One, November 23, 1904.

1. **WILL: Latent Ambiguity: Meaning of Words.** Plaintiff contended that certain words used in the residuum clause of a will written in German, when properly translated, gave the property to "she who has paid" for the maintenance of the testator and an imbecile daughter, but his expert witnesses said the proper translation was "those who shall have paid" for such maintenance. Plaintiff also offered to show that the testator's only sister had contributed to such maintenance, and therefore she was entitled to the property. As a matter of fact she owed him $1,500, and no person had contributed to his maintenance. *Held*, that, the interpretation given the words by plaintiff's expert testimony must control, and as under that interpretation no beneficiary met the requirement of contributing to his and the daughter's maintenance, or could be ascertained, that clause of the will was void, and the testator died intestate as to the residuum.

2. ————: ————: **Letter.** A letter written nine years before the will was executed is not competent evidence to explain an ambiguity.

3. ————: ————: **Prior Will.** A prior improperly executed will, found in the same trunk with the one in suit, but essentially and radically different, is not competent evidence to explain ambiguities.

4. ————: ————: **Statements of Testator.** Statements of what testator told outsiders after the execution of his will as to his intentions with respect to his property, should be excluded.

5. ————: **Presumption of Intestacy.** Courts always presume that a testator intended to dispose of his whole estate. But when one who is incompetent to draw a legal instrument, attempts to do so, and in the doing utterly fails to meet the requirements of the law, the courts have no power to make a will for him.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Theodore Bruere & Son* for appellant.

(1) The judgment or construction of the will by the circuit court is against the true intent and meaning,

of the testator as manifested by the will; it was the duty of the court to carry out testator's intention. There can be no doubt from the language of the will that the testator intended that his daughter should have only a life estate in his house and lot; under the decision of the circuit court she gets the whole estate. R. S. 1899, sec. 4650; Crecelius v. Horst, 78 Mo. 566; Small v. Field, 102 Mo. 104; Nichols v. Boswell, 103 Mo. 151; Long v. Timms, 107 Mo. 512; Watson v. Watson, 110 Mo. 164; Shumate v. Bailey, 110 Mo. 411; Murphy v. Carlin, 113 Mo. 112; Redman v. Barger, 118 Mo. 568; Clotilde v. Lutz, 157 Mo. 439; Hurst v. Von De Veld, 158 Mo. 246; Wendler v. Lambeth, 163 Mo. 428; Underwood v. Cave, 176 Mo. 1.    (2)   In order to effectuate the meaning of Theine's will the circuit court should have changed the word "have" (or the German word "haben") to the word "has" (or the German word "hat") which it failed to do.   The difference between appellant's translation, "my remaining estate shall be an inheritance for she (die) who has paid for the maintenance of myself and daughter," and the translation contended for by appellee, "my remaining estate shall be an inheritance for those (die) who have paid for the maintenance of myself and daughter," is caused by the use of the German word "haben" (or have) instead of "hat" (or has).   All experts agree that "she" is the right translation for "die."   Some think that because the word "haben" is used, therefore the word "die" should be translated with "they" or "those."   As to the power of a court of equity to change and supply words in a will see: Peters v. Carr, 16 Mo. 54; Nichols v. Boswell, 151 Mo. 56; Thompson v. Thompson, 115 Mo. 56; Briant v. Garrison, 150 Mo. 655; Wendler v. Lambeth, 163 Mo. 428; White v. McCracken, 87 Mo. App. 262.    (3)   The circuit court erred in not ignoring or striking out all that follows after the words "for the maintenance of myself and daughter," to-wit: "That may be, that he or that she or they after they have

buried me in the Lehnhoff family lot in the city grave-yard at Salisbury, Chariton county, Missouri.'' Be-cause said words are a part of an unfinished sentence, have no meaning and therefore cannot affect the sen-tence immediately preceding it. As to the right of the court to strike out words see: Ford v. Unity Church Society, 120 Mo. 98; Wendler v. Lambeth, 163 Mo. 428; White v. McCracken, 87 Mo. App. 262. (4) The court committed error in excluding evidence showing what the surrounding circumstances were at the time the tes-tator wrote his will, and specially in excluding his in-formal will. Reinders v. Koppelman, 94 Mo. 338; Small v. Field, 102 Mo. 104; Nichols v. Boswell, 103 Mo. 151; Watson v. Watson, 110 Mo. 164; Shumate v. Bailey, 110 Mo. 411; Garth v. Garth, 139 Mo. 456; Rothwell v. Jamison, 147 Mo. 601; Webb v. Hayden, 166 Mo. 46; Robard v. Brown, 167 Mo. 457; Willard v. Darrah, 168 Mo. 660; Thompson v. Ish, 99 Mo. 160; Thompson v. Thompson, 115 Mo. 56. (5) The circuit court disre-garded the rule which declares that the presumption is always that the testator intended to dispose of his whole estate.

*T. F. McDearmon* and *W. F. Achelpohl* for re-spondent.

(1) There is such a patent ambiguity and uncer-tainty as to the residuary devisees and legatees of this will, on its face, as to be obvious at a glance, and such as to render the will invalid and void. Such an ambigu-ity cannot be cured by extrinsic evidence. There is noth-ing in the will which indicates or suggests with any de-gree of certainty who the residuary legatees are and nothing from which they could be ascertained, even if the greatest latitude of extrinsic evidence were allowed. Such evidence will not be allowed where the ambiguity is patent; in such case the will must be construed from its contents alone. Davis v. Davis, 8 Mo. 56; Gregory

v. Cowgill, 19 Mo. 415; Bradley v. Bradley, 24 Mo. 311; King v. Fink, 51 Mo. 209; Carter v. Holman, 60 Mo. 504; Drake v. Crane, 127 Mo. 85; Mersman v. Mersman, 136 Mo. 244; Briant v. Garrison, 150 Mo. 655; Hurst v. Von De Veld, 158 Mo. 239.   (2)   A patent ambiguity in a deed or will occurs when a clause thereof is so defectively expressed that a court which has to put a construction on the instrument is unable to collect or determine the intention of the party making the will or deed.   Again, it is such ambiguity as appears on the face of the writing itself or an inherent infirmity which cannot be removed by the ordinary rules of legal construction, or it is an ambiguity which arises upon the words of the will or other instrument as looked at in themselves, and before any attempt is made to apply them to the object which they describe.   1 Bouv. Law Dict. (3 Ed.), p. 103; Anderson's Dictionary of Law, p. 54; 2 Am. & Eng. Ency. of Law (2 Ed.), 288; Carter v. Holman, 60 Mo. 504; Mudd v. Dillon, 166 Mo. 120.   It seems clear that the ambiguity in the will in question is of the character above defined.   If so, extrinsic evidence is inadmissible to explain or affect it in any way. Mudd v. Dillon, 166 Mo. 120; Carter v. Holman, 60 Mo. 498; Campbell v. Johnson, 44 Mo. 247; Bell v. Dawson, 32 Mo. 79; Bradley v. Bradley, 24 Mo. 311.

MARSHALL, J.—This is a bill in equity by the executor of Frederick Theine, deceased, who died on January 29, 1901, to obtain the advice and direction of the court as to the proper construction to be placed on the will of said Theine.   The defendant, Caroline Theine, is the only daughter and sole heir of the deceased, and is an insane person in the St. Charles Asylum.   A summons to her was duly issued and served upon her.   Thereafter the probate court of St. Charles county appointed the defendant W. F. Achelpohl the guardian of her person and the curator of her estate, and he appeared, filed an answer and defended the suit.

In July, 1899, Frederick Theine wrote his own will, in the German language, and executed it.   The will in German is as follows:

"Ich als Testator Bescheinige hiermit meinen Letzten Willen.   Ich Vermache meiner Tochter Caroline die Haus Rent nach abzug der Takse und Rapraturen and Feur Inschurens hier in St. Charles, so lange als sie am Leben ist, mein uheriger nachlass sol eine Erbschaft sein fur die Welche den Genisz fur mich und meine Tochter besahlt haben das mag sein das Er· oder das sie oder die nach dem sie mich Begraben auf den Statischen Fried—hofe auf den Lehnhofschen familien Lot zu Salisbury, Cariton Co., Mo.

"FRED THEINE.

"Testaments Volstrecker sind

"HENRY M. LEHNHOFF,
"WILLIAM LEHNHOFF,
"GUS F. LEHNHOFF."

In the petition the plaintiff claims that the proper translation of the will is as follows:

"I as testator herewith certify my last will and bequeath to my daughter Caroline the house rent after deducting taxes and repairs and fire insurance, here in St. Charles, so long as she is alive; my remaining estate shall be an inheritance for *she who has paid* (den genisz) for the maintenance of myself and my daughter, that may be that he or that she or they after they have buried me in the Lehnhoff family lot in the city graveyard at Salisbury, Chariton county, Missouri.

"Executors are:   Henry M. Lehnhoff, William Lehnhoff, Gus Lehnhoff.

"FRED THEINE."

The defendant on the contrary claims that the · proper translation of the will is that given by Rev. Frederich, a witness for the plaintiff, and the pastor of the Lutheran church at St. Charles, which is as follows:  .

"I as testator do hereby certify this to be my last will; I leave or bequeath unto my daughter Caroline the house rent after the taxes and repairs and fire insurance here in St. Charles have been deducted so long as she is alive, or lives, the remainder of my estate shall be an inheritance *for those who shall have paid* for me and my daughter's maintenance ["enjoyment; I want to say this word genisz is altogether misapplied here, but that's the way I would translate it, enjoyment or maintenance;"] the things which I and my daughter need to sustain our bodily life; that may be that he or that she or that they after they shall have buried me in the city cemetery on the Lehnhoff lot at Salisbury, Chariton county, Missouri."

Substantially the same translation is given by Professors Wagner and Mueller, teachers in the Lutheran school in St. Charles; by Prof. Dinkmeyer, a teacher in ·German, and by Father Wilmes, the priest in charge of the German Catholic church in St. Charles. They are all experts and were called as witnesses by the plaintiff.

These witnesses all say that the word "*die*" must be read in connection with the verb "*haben*," and that as the verb is plural, the pronoun must also be plural, and hence the residuum clause of the will must be translated: · "the remainder of my estate shall be an inheritance for *those who shall have paid* for me and my daughter's maintenance," and not, as the plaintiff claims, "my remaining estate shall be an inheritance for *she* who *has* paid for the maintenance of myself and daughter."

These witnesses agree that to warrant the translation claimed by the plaintiff the words would have to be: "Die hat," that is, the verb would have to be in the singular number, but that the words in the will being "die haben," mean "those who shall have." That is, the pronoun is both singular and plural, and takes its number from the verb with which it is connected.

Predicated upon this translation and upon the theory of a latent ambiguity in the will, the plaintiff offered evidence to show that the testator had only one sister, Mrs. Charlotte Lehnhoff, wife of William H. Lehnhoff, who lived in Chariton county, and that she had furnished maintenance for the testator and his daughter. On the contrary the defendants offered to prove that several persons had furnished maintenance for the testator and his daughter, but the defendants also contended that the ambiguity was patent and not latent, and therefore extrinsic evidence was inadmissible to explain it, and hence the attempted devise of the residuum must fail for uncertainty, and the daughter would therefore inherit the property under the statute of descents. The court excluded all the testimony in this regard that was offered by both parties, and the plaintiff excepted.

The plaintiff also showed that just prior to his death the testator told the plaintiff (who was his nephew and the son of his sister Charlotte Lehnhoff aforesaid), that he would find his will in his trunk, and that after his death the plaintiff there found the will here in question, and that enclosed in the same envelope with this will was a prior improperly executed and insufficient will, which translated was as follows: "I the undersigned, of sound mind, give three deeds of trust as an inheritance to my sister Charlotte Lehnhoff, residing at Salisbury, Chariton county, Missouri, and desire to be buried by the family Lehnhoff in the city graveyard in our lot enclosed by a common fence; should Lena die after me, then she may also be buried there. Fred Theine. (Seal.)"

The plaintiff also offered to prove that the inventory of the estate showed that in addition to the house and lot in St. Charles, the rents of which the testator provided should go to his daughter, the estate consisted of $300 in the First National Bank of St. Charles; $300 in the St. Charles Savings Bank, and three deeds of

trust; one executed by his sister's husband, William H. Lehnhoff, to the testator, for fifteen hundred dollars and interest; one executed by William H. Lehnhoff and Charlotte Lehnhoff to the testator for twelve hundred dollars; and a third executed by Charlotte Lehnhoff to the testator for one thousand dollars,—the whole personalty aggregating $4,417.95.

The plaintiff further offered a letter from the testator to his said sister, dated March 4, 1890, which was as follows: "Dear Sister: That you may not go into the grave as a defaulter, that you can pay all your debts and will do so, after my death you will inherit the farm if you cannot pay all before that. I would like to see one of your children live on the place."

The court excluded all of the testimony so offered and the plaintiff excepted.

The plaintiff then offered in evidence a deed of trust for $500 on the house and lot in St. Charles, dated January 9, 1900, made by Frederick Theine, party of the first part, to the county of St. Charles, party of the second part, which recited that the five hundred dollars "shall be used and appropriated by said county of St. Charles to the support of said Lena Theine so long as she shall live or remain insane, and the county of St. Charles hereby obligates itself, for and in consideration of this conveyance, to support and provide for said Lena Theine at the county asylum of St. Charles, Missouri, and suffer her to remain there so long as she lives or remains insane."

It was further provided in the deed that the five hundred dollars should be paid to the county of St. Charles after his death out of his estate in preference to all other claims against his estate, and if not so paid, the deed of trust should be foreclosed and the land sold and the proceeds applied to the payment of the five hundred dollars. The deed was duly recorded on the day of its execution.

The court excluded the deed and the plaintiff excepted.

It appears that after his death, his executor paid the five hundred dollars to the county of St. Charles.

The circuit court decreed the residuum clause of the will to be void for uncertainty, and ordered that the whole estate, upon final settlement, should be turned over to the daughter of the testator or to any one for her duly authorized to receive it. From this decree the plaintiff appealed.

## I.

The essential difference between the contentions of the parties herein is as to the translation into English of the words "die haben" in the residuary clause of the will. The plaintiff claims that they should be translated, "she who has paid," and the defendant claims that they should be translated, "those who shall have paid." The difference is marked and very important. "She who has paid," is in the past tense and signifies an act already performed, or as applied to this case would mean that prior to the date of the will some female had paid for the maintenance of the testator and his daughter, and the plaintiff offered to show by extrinsic evidence that "she" spoken of referred to testator's sister, Mrs. Charlotte Lehnhoff. This construction would greatly benefit her, for under it she would receive the three deeds of trust made by herself and her husband, aggregating thirty-five hundred dollars, thereby extinguishing her debt, and also the six hundred dollars cash in the banks, and the remainder in fee to the house and lot in St. Charles, after the death of the life tenant, the testator's daughter.

On the other hand, "those who shall have paid," is in the future potential tense, and signifies that up to the date of the will no one had paid for the maintenance of the testator and his daughter, but that it was the intention of the testator that if any one should thereafter

pay for the maintenance of the testator and his daughter they should have all of his estate, except the life estate given to his daughter, immediately upon his death, and also the fee to the house and lot after his daughter's death. Who such persons should be, were, of course, unknown to the testator, and are likewise impossible of ascertainment from the face of the will, and can never now become existent, for the reason that the testator was not only amply able to pay for his own maintenance and that of his daughter, as long as he lived, but also because the testator made provision for the maintenance by the county of St. Charles of his daughter, after his death, and that provision has been carried out since his death.

Both parties concede that the last sentence of the will, "that may be that he or that she or that they shall have buried me in the city cemetery on the Lehnhoff lot at Salisbury, Chariton county, Missouri," is meaningless, and plaintiff says that those words should be rejected. Upon plaintiff's theory that "die haben" means "she who has paid," those words would be meaningless. But upon the defendant's theory that "die haben" means "those who shall have paid," the last sentence aforesaid might be construed to mean that the estate should go to those who should thereafter pay for the maintenance of himself and daughter and who should thereafter pay for having him buried in the Lehnhoff lot in the cemetery at Salisbury. Thus construed the whole will harmonizes and effect is given to all its parts. The fact that in this last sentence the words employed, "shall have buried me," are in the future potential tense, gives strong support to the correctness of the defendant's contention, that the proper translation of the words "die haben" is "those who shall have paid" for his and his daughter's maintenance.

But aside from this the whole evidence in the case, upon the question of meaning of those words, was ad-

duced by plaintiff, and those expert witnesses say they mean, "those who shall have paid for my and my daughter's maintenance," and this forecloses all controversy as to that matter in this case.

It does not appear that any one paid for such maintenance or burial. On the contrary the testator had enough and more than enough to maintain himself and his daughter, while he lived, and to bury him after his death, and he provided for the support and maintenance of his daughter after he was gone, and left enough more to make this suit necessary. It also appears that instead of his sister supporting him, she and her husband owed him over thirty-five hundred dollars at the time of his death. He was, therefore, their creditor and not their debtor. He had helped them instead of needing help from them. This results in holding that the words "die haben" mean "those who shall have paid" for the maintenance of himself and his daughter and that the last sentence of the will means he, she or they who shall have buried him after his death. The will does not disclose who such persons would be, for manifestly the testator did not and could not know at the time the will was executed. The fact is that upon the evidence adduced there were no such persons, and there were no such persons, for there was no need of any such help. In the face of these physical facts, no chancellor would believe any witnesses who might swear that there were any such persons.

The residuary clause of the will, therefore, fails, because there is no one named as the beneficiary therein; and because there is no one competent to take as such beneficiary in fact and no such beneficiary could exist in this case.

Under either translation of the words involved, the trial court reached the right conclusion. And as this is a suit in equity and as all the evidence that was offered that was competent is preserved in the record, this court can consider it and render a proper judgment.

The letter of March 4, 1890, was written nine years before the will was executed, and was therefore properly excluded for that reason, if for no other.

The prior improperly executed will only attempted to forgive his sister and brother-in-law their debt to him, and instead of throwing light on this will, is essentially and radically different from it. There was no error, therefore, in excluding it.

The deed of trust to St. Charles county providing support for his daughter after his death, was made some six months after the will was executed, and does not refer to the will. It would only be valuable in contradiction of any oral testimony that might have been adduced to support the claim that any one had paid for the maintenance of the daughter after the death of the testator. But as there was no such testimony, and as its effect as a physical fact could not help the plaintiff's case, and as it is preserved in the record any way and whatever weight it carried is before this court, the plaintiff was not prejudiced by the ruling of the trial court in that regard.

The inventory should have been admitted. It tended to show a live subject-matter for controversy, and also bore upon the question as to whether there was any one competent to take as a beneficiary under the residuary clause of the will. Its effect has been taken into account in this court, but it does not help the plaintiff's case.

The court properly excluded the testimony as to what the testator told outsiders after the will was executed as to his intentions with respect to his property. Properly executed wills do not need such help, and defective or impossible wills cannot be pieced out by such extrinsic evidence, which at best is very unreliable.

Courts always presume that a testator intended to dispose of his whole estate. But when one who is incompetent to draw a legal instrument, attempts to do so, and in the doing utterly fails to meet the require-

ments of the law, the courts have no power to make a will for him.   This case shows the folly of a layman attempting to make legal instruments.   No instrument seems as simple to draw as a will, and most men think themselves competent to draw one, but the books show more controversies over wills than almost any other kind of a legal document.   And even the liberal rules of construction prescribed by the statutes and followed by the courts, are often strained to their limit to uphold wills that have been prepared by unscientific persons. There is no act or legal document in man's experience, wherein he has more need of an expert lawyer, than in the preparation and execution of a will, for there is none.that is more liable to become the subject of a lawsuit.

The judgment of the circuit court is right and is affirmed.

All concur, except *Robinson, J.*, absent.