Tom EDWARDS, Carnie Viehman, Alice Halbert, Johnnie Edwards, Golden Ray, Katie Bobbit, Carnie Pilgrim, Hallie S. Spurgen and George Edwards, Appellants,

v.

Maggie PAYNE and G. T. Edwards, Respondents.

No. 45764.

Supreme Court of Missouri, Division No. 2.

Dec. 9, 1957.

Lawrence J. McKim and Samuel J. Kevrick, St. Louis, for appellants.

G. C. Beckham, Steelville, for respondents.

STOCKARD, Commissioner.

John H. Edwards died in 1938, owning in fee a 40-acre farm located in Crawford County, Missouri, which is now worth about $2,750. He left a will which contained the following provision: "I give and bequeath all the property I die seized of whatever kind, real, personal or mixed to my beloved wife, Nancy Edwards, during her natural life, and to sell any part of same if it be necessary for her maintenance and the remaining part to be divided equally between my children at her death." On September 6, 1945, Mrs. Edwards executed and delivered to Maggie Payne, her daughter, a general warranty deed purporting to convey fee simple title to the said farm. On November 17, 1955, after the death of Mrs. Edwards, this suit was instituted by some of the heirs at law of John H. Edwards seeking to set aside the deed to Mrs. Payne. From an adverse judgment they have appealed.

Plaintiffs contend on this appeal that Mrs. Edwards did not have the right or power to convey the farm in fee simple, and that if she did, the conveyance ought to be set aside for failure of consideration.

John H. Edwards was unemployed for ten or twelve years before his death, but for several years prior thereto he and his wife each had received an old age pension, and according to Tom Edwards, one of their sons who is a plaintiff in this suit, they both lived reasonably well therefrom. After the death of her husband, Mrs. Edwards lived on the farm alone, and she continued to receive an old age pension of $17 per month. However, in 1945 the pension had been increased to $22 per month, and for about six years before her death in 1955, it had been $55 per month. In the early part of August 1945, when she was 82 years of age, she became ill, and her daughter, Maggie Payne, who was then a widow, went to her mother's home to take care of her. After Mrs. Edwards recovered from that illness, which lasted about three weeks, Mrs. Payne remained with her mother for almost ten years and until her death occurred on April 5, 1955, at 92 years of age. On September 6, 1945, the deed in question was executed and it was recorded less than three weeks later. According to Mrs. Payne, her mother stated that "the kids don't care enough to come in here and wait on me. I am going to deed this to you for you to stay the rest of my days." There was other evidence that Mrs. Edwards had said that she had conveyed the farm to Mrs. Payne in return for her daughter agreeing to remain with her and take care of her.

Tom Edwards, one of the plaintiffs, testified that he first learned of the deed after his mother's death when he checked the records in the recorder's office, but this was disputed by Mrs. Payne who testified that nine or ten years before the trial Tom was told about the deed, and that he said, "Well, you have got the place, nobody can bother it, she [the mother] has deeded it to you to take care of her, and you are going to earn it."

In support of their contention that there was no consideration for the deed, plaintiffs contend that "the need for the maintenance was not present," and they offered evidence that throughout the last ten years of Mrs. Edwards' life, except for her illness in 1945 and her last illness, she was in good health, that she cared for herself, cleaned the house, washed the dishes, and even worked in the garden. However, the plaintiffs who testified tempered their testimony by stating that Mrs. Edwards was able "to get about most of the time," and that her health was "not too bad." It was also stated that during the last three or four years of her life she could not do "much of anything." Mrs. Payne does not contend that her mother was ill all the time or for any substantial period of the time, but she testified that each year she would have several periods of illness, and that during the last two or three years of her life she fell a number of times. She further testified that her mother was not able to do any of the housework, but that she did all of this work, cared for her mother, made garden, took care of some

chickens, and even chopped some of the wood. It is admitted that during her last illness, which lasted several weeks, Mrs. Edwards was completely helpless and required constant attention.

Plaintiffs do not contend that Mrs. Payne did not remain constantly with her mother the entire period from August 1945 until her death; their contention is that there was no occasion for her to do so. Also, this case does not involve any contention that there was undue influence on the part of Mrs. Payne or lack of mental capacity on the part of Mrs. Edwards.

By reason of the provision of the will of her husband, Mrs. Edwards received a life estate in the farm with the limited power to dispose of any part of it, which would also include all of it, that was necessary for her maintenance. Whatever was left at her death, if any, was then to be divided equally between the children of John H. Edwards. For similar provisions in wills see Citizens Bank of Lancaster v. Foglesong, 326 Mo. 581, 31 S.W.2d 778; and Gent v. Thomas, 363 Mo. 528, 252 S.W. 2d 345. Her authority or right to dispose of the property was contingent on the condition imposed by the will, that is, that it was necessary for her maintenance, 72 C.J. S. Powers § 25a, but when the contingency arose and the power was exercised, then the remainder in the property was thereby defeated and the grantee received the fee. Grace v. Perry, 197 Mo. 550, 95 S.W. 875, 7 Ann.Cas. 948. In Gent v. Thomas, supra, a surviving widow was by will given a life estate in certain real property with the implied power to dispose of the fee if necessary to provide for her personal care and support. In determining whether a deed should be set aside which purported to convey the fee and which was given in consideration of the grantee's promise to care for the grantor, this court stated the test was whether the evidence established that the conveyance was, under the circumstances, reasonably necessary when made to provide

for the personal care and support of the grantor.

John H. Edwards did not leave his widow with an adequate sum of money to provide for her maintenance. At the time of the death of her husband it was necesary that she obtain financial help to pay the cost of his funeral, and at the time of her death the total of her cash assets was about $200. In August 1945, the old age pension of Mrs. Edwards was $22 per month, and this was her only income. She was then 82 years of age, and for seven years she had lived alone in a small three-room house located on the farm in which her husband had given her a life estate. She then became confined to her bed because of illness and she needed help. After she recovered from that illness, if Mrs Payne returned to her own home, she again would be alone. Mrs. Payne was a widow and could remain with her mother, but it is not reasonable to assume that she had to do so in order to have a place to live because she owned her own home. Notwithstanding the testimony of plaintiffs to the effect that Mrs. Edwards was able to care for herself, and that she did so, in September of 1945 this 82-year-old widow, who had been living alone on a farm about five miles from town and who was recovering from an illness, was faced with the necessity of making different arrangements for her future maintenance. She had no money with which to obtain care in an institution for aged people or to hire someone to live with her, and there is not the slightest indication in the record that any of the plaintiffs, or any one else, ever offered to take her into their home. It is true that she never asked any one to do so, but before she was authorized to exercise the power to dispose of the farm to provide for her maintenance, she was not required first to knock on the door of each of the heirs of her deceased husband and be denied admittance. We find no merit whatever in plaintiffs' contention that "the need for maintenance was not present." Even if her health and ability to work were as

plaintiffs claim, a contention we are not inclined to accept, that need was present in September 1945, under the circumstances of this case, by reason of the advanced age of Mrs. Edwards, her recent illness, her financial condition, and the prospect of having to live alone on a farm several miles from town.

Under the circumstances, what were her alternatives? She could sell the farm for cash, but then she would have no place to live, and when that money was gone, she would have nothing but her pension. The other alternative was to get someone to live with her and to help take care of her. This she did by arranging with Mrs. Payne to stay with her and care for her the rest of her life in return for the farm. Not only did this arrangement turn out to be far more advantageous to her than the other alternatives, it unquestionably was the type of an arrangement that would have been contemplated by her husband under these circumstances when he made the provision in his will.

Plaintiffs stress the fact that during the time Mrs. Payne lived with her mother she did not ask them for help, financially or otherwise. However, this only tends to prove that Mrs. Payne was properly and adequately performing what she agreed to do. The purpose of Mrs. Edwards in making the arrangement she did was to prevent the necessity in the future of calling for help as she had to do in August 1945.

Plaintiffs also contend that Mrs. Edwards could sell the farm only for cash, and that Mrs. Payne did not pay for the farm in money. They cite no case in support of their position but rely on 72 C.J.S. Powers § 25e, and quote therefrom the statement that "As a general rule, a power of sale gives authority to sell only for money, and only for cash and not on credit, * * *." However, the immediately preceding sentence of the cited section is the one applicable to this situation, which is, "Where the instrument conferring a power to sell does not prescribe the terms on which sale is to be made, the donee is authorized to sell on such terms as will carry out the intention of the donor."

We have made a careful study of all the evidence, and we conclude that the circumstances of this case establish beyond any reasonable doubt that in September 1945, Mrs. Edwards was faced with the necessity of making arrangements for her future maintenance, that she was authorized to and did sell the farm to Mrs. Payne to obtain that maintenance, and that Mrs. Payne performed her part of the agreement which constituted good and adequate consideration for the deed.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.