CHRISTIAN C. WOLFF, Executor of Estate of ELIZABETH L. DILWORTH, Appellant, v. CATHERINE RAGER ET AL.—30 S. W. (2d) 1005.

Division One, September 4, 1930.

*A. E. L. Gardner* for appellant.

*Jos. C. McAtee* and *E. McDonald Stevens* for respondents.

RAGLAND, J.—This is an appeal from the judgment of the Circuit Court of St. Louis County confirming, upon a hearing *de novo,* an order of distribution made by the probate court of said county in the estate of Elizabeth L. Dilworth, deceased.

For a statement of the facts we adopt in part that of appellant (executor), as follows:

"Elizabeth L. Dilworth, died on the 4th day of March, 1925, in St. Louis County, Missouri. At the time of her death she was single and left no descendants, and at that time her father and mother were both dead, and she left no brothers or sisters or their descendants. Her will was filed for probate in the Probate Court of St. Louis County, Missouri, and was duly probated on the 7th day of March, 1925. Christian C. Wolff was named executor under the will. The will contained a number of bequests which were duly distributed by the executor in accordance with the terms of said will. The will contained also the following provision:

" 'Article 21. I give and bequeath the sum of twenty-five thousand ($25,000) dollars in cash to my heirs at law, to descend and be distributed in parcenary to my kindred, male and female, in accordance with the statute of "Descents and Distributions" of the State of Missouri, being Article XIV, Revised Statutes of Missouri, 1919.'

"To carry out the provisions of the foregoing bequest to the heirs at law of the deceased, the executor made an extensive search for the

heirs of said Elizabeth L. Dilworth, who would be entitled to share in the distribution of said bequest, but was unable to find any heirs at law except upon the mother's side, no heirs on the father's side being found. . . .

"In an effort to locate all the heirs at law of the said Elizabeth L Dilworth, deceased, the executor, Christian C. Wolff, pursuant to a dedimus issued by the Probate Court of St. Louis County, Missouri, took the deposition of Charles E. Rager, a maternal cousin of the deceased, residing at Lebanon, Pennsylvania, on the 14th day of December, 1925. This witness testified that Elizabeth L. Dilworth had two brothers, John and Ed Real, who had died probably ten years before the death of the deceased; that Ed Real lived in Pittsburgh, Pennsylvania, at the time of his death, and left neither wife nor children as far as the witness knew. That John Real died in either Ohio or Pittsburgh and was never married. That Elizabeth L. Dilworth had no sisters; that Elizabeth L. Dilworth's mother's name was Elizabeth Real; and she had been dead about fifteen years; that Elizabeth Real had one sister, Catherine Rager, who is still living in Lebanon, Pennsylvania; that Elizabeth Real had the following brothers: William Bensinger, Paul Bensinger, John Bensinger and Moses Bensinger. None of these brothers were living at the time of the death of said Elizabeth L. Dilworth.

"On the same day, and pursuant to the same dedimus the deposition of Catherine Rager was taken in Lebanon, Pennsylvania. She had known Elizabeth L. Dilworth in her lifetime and since she was a little girl. Her mother was the sister of the witness. Mrs. Dilworth's father's name was John Real, but was never seen by witness. She heard of him as living out West, but he had been dead about thirty-five years. John Real left no brothers or sisters. That after her marriage to John Real out West, witness's sister came back to Tremont, Pennsylvania. At the time of her death Elizabeth L. Dilworth was at least sixty-five years old and probably older. She was about ten years old when her mother came back from the West. Witness knew that Mrs. Dilworth had two brothers, John and Ed Real, who had been dead over fifty years, and who were never married.

"Pursuant to a stipulation of the parties, the deposition of Charles M. Bensinger of Donaldson, Pennsylvania, was taken on the 23rd day of August, 1927. He is a first cousin to Elizabeth L. Dilworth on the mother's side, and testified that the maiden name of Mrs. Dilworth's mother was Elizabeth Bensinger, and that her marriage name was Mrs. John Real. This witness had known Mrs. Dilworth's mother since 1886, and lived with Mrs. Dilworth and her mother in Pittsburgh, Pennsylvania, during the years 1887 to 1889. He heard Mrs. Dilworth's mother say that she was never married; that Elizabeth Dilworth was her child. The statement was made in

the presence of Elizabeth Dilworth and her mother and himself in Pittsburg, Pennsylvania. He heard Mrs. Dilworth say in the presence of her mother that she did not know who her father was and had never seen him. This was told him in 1898. Mrs. Dilworth said her mother only chose the name of Real to keep disgrace from relatives.''

On the 16th day of February, 1927, Charles M. Bensinger, one of the respondents here, filed in the probate court his affidavit in which he set forth the names of the persons who he averred were the heirs, and all the heirs, of Elizabeth L. Dilworth, deceased. The persons so named were the aunt and the descendants of deceased uncles and aunts of said Elizabeth L. Dilworth, deceased, on her mother's side. On the 17th day of February, 1927, the persons so named in the affidavit filed their petition in the probate court alleging that they were the heirs, and all the heirs at law, of said testatrix, and praying an order of the court so declaring, and directing that the bequest of $25,000 be paid to them by the executor. After hearing, an order was made as prayed. From such order the executor was allowed an appeal to the circuit court.

The records of the probate court do not show that notice of any kind was given of the application for distribution, prior to the making of the order. But pending the appeal to the circuit court a notice was published by the executor in a weekly newspaper published and circulated in St. Louis County to the effect that the executor would make application to the *probate court, on May 31, 1927*, for an order of distribution to the heirs at law of Elizabeth L. Dilworth, deceased, of the sum of $25,000 bequeathed to them by her will. Neither do the records of the probate court, as brought up in the abstract filed here, show that the order of distribution was made ''at the first semi-annual settlement or the final settlement'' of the executor: their implications are plainly to the contrary.

On the hearing anew in the circuit court that court found and adjudged that the persons designated in the order of distribution made by the probate court ''are the only heirs at law of said Elizabeth L. Dilworth, deceased, capable of inheriting of said Elizabeth L. Dilworth, deceased.'' It thereupon ordered that the executor pay the bequest of $25,000 to them.

The judgment of the circuit court was rendered on October 12, 1927, at its September Term, 1927. At the same term, on January 5, 1928, the executor was granted an appeal to this court. On January 21, 1930, Dorothy Vic and others filed their petition in this court, in which they averred: ''That they are heirs at law of the said Elizabeth L. Dilworth, deceased . . . ; that they did not know of the death of the said Elizabeth L. Dilworth and had no knowledge of the administration that was being had upon her estate

in the Probate Court of St. Louis County, Missouri, until after the Circuit Court of St. Louis County, Missouri, had affirmed an order of the probate court . . . for the distribution of said legacy ($25,000) among the above named respondents; (and) that these petitioners have had no opportunity to prove and establish their right to participate in the distribution of the said legacy.'' They asked that they be given ''an opportunity to make proof and establish their right as heirs at law of the said Elizabeth L. Dilworth, deceased, to participate in the distribution of the said legacy.'' In support of their petition, and as showing diligence on their part, they filed a certified copy of a similar petition which they had filed in the circuit court on November 24, 1927, and during the same term at which the judgment was rendered by that court. In such petition they had asked that the judgment ordering distribution be set aside and that they be given an opportunity to make proof of their right to participate in the distribution. The petition or motion filed in this court was upon submission taken with the case.

The foregoing is a general outline of the facts involved in the controversy here.

Appellant's contention in substance is: that all persons claiming an interest in the legacy were not brought into court by notice; that as to claimants, if any, who have in fact an interest in the legacy and who were not notified of the proceeding, the judgment of distribution made by the circuit court is absolutely void; and that being so void it will not protect him from liability to again pay, if the interests of such claimants be subsequently established.

I. Our jurisdiction in this proceeding is appellate: our review is limited to matters brought upon the record. Dorothy Vic and others who join with her in the motion heretofore referred to are strangers to the record: there is no reference therein to the petition alleged to have been filed by them in the circuit court, and consequently no showing of the action of that court, if any, with respect thereto. Their motion filed here must therefore be denied.

II. The only question involved in this appeal is whether notice of the application for distribution was given as required by law. Section 241, Revised Statutes 1919, as amended in 1921 (Laws 1921, p. 115), provides:

''Each person entitled to distribution or partition, not applying therefor, shall be notified, in writing, of such application ten days before any such order shall be made; or if such person does not reside in this State, a notice of such application shall be published in some newspaper in the county four weeks before any such order shall be made; provided that the court may make distribution of the money, and personal property, notes, and choses in action and order

the payment of legacies at the first semi-annual settlement or the final settlement without any notice having been given to the heirs, legatees or persons entitled to distribution or partition of such intended distribution.''

The first part of the section specifically prescribes both the time and the manner of giving notice (1) to residents of the State and (2) to persons who do not reside in this State. It clearly contemplates the giving of notice in both instances to known persons. Under the latter part of the section, the proviso, the court may make distribution or order the payment of legacies ''at the first semi-annual settlement or the final settlement without notice.'' The publication of the notice of the grant of letters and the publication of notice of final settlement, in connection with the statutory provisions relating to administration, impart to all distributees and legatees, known and unknown, constructive notice of times when orders of distribution will or may be made. Considering the section as a whole, it is very clear that, unless an order of distribution be made at the first semi-annual settlement or the final settlement, notice of the intended application therefor must be given to each person entitled to distribution, if known. Consequently, an order made at a time other than at the first semi-annual settlement or the final settlement, and without notice to a known distributee, would as to him be void. Would it under the same circumstances be valid as to a distributee who was unknown to the administrator or executor? Not unless the Legislature intended that the publication of notice of the grant of letters should, in and of itself, be constructive notice to heirs and legatees of every hearing, order or judgment of the court subsequently, and whenever, had or made in the administration of the estate. The enactment of Section 241 clearly indicates that such was not the legislative intent. For if an order of distribution or for the payment of legacies is not made at the first semi-annual settlement or at the final settlement, an additional notice of the application therefor must be given. And if additional notice under such circumstances must be given the known distributees and legatees, it must be given the unknown. This because there is nothing in the Administration Act to indicate that notice of letters should have any greater or different effect in concluding the rights of unknown distributees and legatees than in concluding those of the known. On the contrary Section 79, Revised Statutes 1919, requires that ''when an intestate has left no known heirs'' there shall be published, in addition to notice of the grant of letters of administration, ''a notice once a week for six consecutive weeks in at least two newspapers containing the name of the intestate, the description of his person, the time and place of his death, the place of his nativity, if known, and the appraised amount of his estate.''

Proceedings in the probate courts of this State are not strictly *in rem*: they are somewhat in the nature of proceedings *in rem*, in which persons in interest are afforded an opportunity to be heard. [State ex rel. v. Goggin, 191 Mo. 482, 487, 90 S. W. 379.]

Having reached the conclusion that it was not the legislative intent that the publication of notice of letters should be the only notice given heirs, distributees and legatees of applications for orders of distribution and for the payment of legacies (except as mentioned in the proviso), we return to said Section 241 to ascertain whether it provides for additional notice in all other contingencies. Eliminating those mentioned in the proviso, we find that it provides for personal service of notice in writing to resident distributees and legatees. They of course must be known. It further provides for the publication of notice to non-residents. This latter notice, if directed merely to the heirs, distributees and legatees of the decedent, without naming them, would conceivably be good as to all non-residents, whether known or unknown. But clearly the Section does not provide for giving notice to unknown distributees and legatees who reside in this State.

The omission referred to in the preceding paragraph, whether the result of legislative inadvertence or otherwise, is supplied by the provisions of Section 1202, Revised Statutes 1919. The provisions of this section are not limited to actions affecting real estate; by their express terms they are of general application: they apply in any action brought in any court of record, whereby a right or title to specific property, real or personal, is sought to be established or enforced: a compliance with them imparts constructive notice to unknown persons who have, or claim to have, an interest in the subject-matter of the action, whether they are residents, or non-residents of the State.

The fact that formal pleadings are ordinarily not required in proceedings in the probate court does not render the provisions of Section 1202 inapplicable in a case such as this. The section contemplates of course a proceeding in which there are adversary parties, and such would have been an appropriate form of action for these respondents to have adopted in order to have established title in themselves to the bequest as against all other claimants thereto. [Young v. Byrd, 124 Mo. 590, 28 S. W. 83; State ex rel. v. Fidelity & Deposit Co., 317 Mo. 1078, 1092, 298 S. W. 83.] In the great majority of cases persons who constitute the heirs at law, the distributees, or the legatees, are well known and no necessity arises for giving notice in accordance with the provisions of Section 1202; in any event the requirement of notice may be avoided by the making of orders of distribution and for the payment of legacies at the first semi-annual settlement or at the final settlement.

If in this case the record disclosed that a person entitled to participate in the distribution was not notified of the application therefor, and was not awarded a share in the fund according to his right, the judgment would necessarily have to be reversed. While the record does not show that an opportunity to be heard was not given to one who had in fact an interest in the legacy, it does abundantly appear that the identity of the persons who constituted the heirs at law of the testatrix was veiled in doubt and uncertainty, and that, notwithstanding, a group of persons claiming to be such heirs, on an *ex parte* hearing, without notice of any kind, were awarded the fund. The judgment rendered is not only worthless, except as between the parties to whom the fund was distributed, but may result in great injustice. This is emphasized by the fact that persons who are strangers to the record are here demanding an opportunity to be heard in respect to their claims to the fund. In order that all persons who claim an interest in the legacy, known and unknown, may be brought in by notice and a final and conclusive adjudication of their respective rights had, this action should be dismissed and a new proceeding commenced in the probate court. The judgment of the circuit court is accordingly reversed and the cause remanded with directions to that court to dismiss the proceeding without prejudice. All concur.