255 S.W.2d 817 (1953)
RAY
v.
NETHERY et al.
No. 42949.
Supreme Court of Missouri, Division No. 1.
March 9, 1953.
A. H. Garner, Roy Coyne and Ray E. Watson, Joplin, for appellants.
Norman, Foulke & Warten, Joplin, for respondent.
HOLLINGSWORTH, Judge.
This is a declaratory judgment action involving the will of Nettie Lee, a widow with no descendants, who died a resident of Jasper County, Missouri, on the 2nd day of August, 1950, owning real property of an inventoried value of $5400 and personal property of an inventoried value of $4851.31. The will was executed on February 8, 1947. With the exception of $5 bequeathed to one Howard Keiker Lee, and which bequest is of no further concern in this case, the disposition of all of *818 Mrs. Lee's property is provided for in the third clause thereof, as follows:
"Third: I hereby devise, bequeath, and give to the party or parties, whoever they may be, who take care of me during my last sickness, and sees that I am properly cared for, as I am now practically an invalid, and must have some care. And whoever the party, or parties are that come into my home and take care of me, and provide for me, I desire that the court declare said party or parties who establish the fact that they have cared for me in my last sickness, to take all of my property, real, personal, or mixed, in payment of, and for their services in so taking care of me * * *."
Following probate of the will, plaintiff-respondent brought this action against the heirs of Mrs. Lee, Howard Keiker Lee and the administratrix with will annexed of Mrs. Lee's estate. The petition alleged that in March of 1950, at the request of Mrs. Lee, plaintiff entered her home and thereafter cared for her during her last illness which continued until her death on August 2, 1950, whereby he became the person designated in the third clause of her will as the residuary beneficiary of her will; and prayed judgment declaring him the legatee of her personal property and devisee of her real property. Defendants Ruth Nethery, both as a niece of Mrs. Lee and as administratrix of her estate, Fred W. Bridges, a brother, and Mildred Holt and Jewell Bridges, nieces, filed separate answers, all of which, in effect, were denials of the grounds upon which plaintiff based his claim as beneficiary. All other defendants defaulted.
Upon trial of the issues the court found that the allegations of plaintiff's petition were true, but that defendant, Fred W. Bridges, (who, it should be here noted, did not in his answer seek any share of the estate) rendered some services to testatrix during her last illness and should also take of her property; and that the proportions in which plaintiff and Fred W. Bridges should share were: plaintiff, two-thirds; Fred W. Bridges, one-third. Judgment was entered accordingly. The answering defendants appealed; plaintiff did not.
In their "points and authorities", appellants assert: (1) That since the third clause of the will did not confine the beneficiary or beneficiaries therein contemplated to the heirs of testatrix the petition "should have been directed against any known claimants and also against any unknown claimants"; (2) that the greater weight of the evidence shows plaintiff did not qualify as a beneficiary under said third clause; and (3) that assuming that both plaintiff and Fred W. Bridges qualified as beneficiaries, the court erred in apportioning the estate two-thirds to plaintiff and one-third to Bridges.
Prior to discussion of the aforesaid assignments, it is necessary that we determine whether this court has jurisdiction of the appeal. The parties have agreed that jurisdiction is vested here on the ground that more than $7500 is involved, but we think the record does not affirmatively show that to be the fact. Other than the inventory and settlements filed in the probate court, there is no evidence in the record as to the net distributive value of the estate. The inventory, as stated, showed a gross value of $10,251.31. The "second" (and apparently the last) settlement shows a balance, including real estate, in the sum of $9,519.68. But the amount actually in controversy between the parties hereto is the value of the portion awarded plaintiff, which was only two-thirds of $9,519.68. This, for the reason that in their brief appellants admit that "We think the court was correct in its finding as to Fred W. Bridges." Now, while it is true that Fred W. Bridges, by his answer, sought to recover no part of the estate, yet the court awarded him one-third interest therein, his co-appellants concede his right thereto, and plaintiff did not appeal from that judgment. Hence, as between the parties, only that portion of the estate awarded plaintiff is involved, which as above shown is less than $7500.
We are convinced, however, that jurisdiction is vested in this court on the ground that title to real estate is directly involved.
*819 Unless and until some person establishes that he is the qualified beneficiary under the third clause of Mrs. Lee's will, it is wholly inoperative as to the residue of her estate, and eventually must fail if that fact is not established. In the latter event, defendants as the heirs of Mrs. Lee would become the owners of the real estate of which she died seized. It seems quite clear, therefore, that this suit by which plaintiff sought to have the will declared operative as to him and to invest title to all of the real estate in him and by which he recovered a judgment investing him with an undivided two-thirds interest therein, thereby divesting to that extent the interest to which defendants as Mrs. Lee's heirs would have succeeded but for the will becoming operative, directly involves title to real estate within the meaning of Section 3, Article V, of the Constitution of Missouri, V.A.M.S., which defines our jurisdiction. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771; State ex rel. Pemberton v. Shain, 344 Mo. 15, 124 S.W.2d 1087. See also Love v. White, Mo. App., 150 S.W.2d 494; Id., 348 Mo. 640, 154 S.W.2d 759.
Moreover, the petition herein prayed that plaintiff "take all of the property, real, personal or mixed, of the said Nettie Lee, deceased, as in her last will and testament provided"; and the judgment rendered declared that plaintiff be "vested with an undivided two-thirds interest in and to the real estate of testatrix". Our decisions are clear that where the judgment sought would take or the judgment rendered does take title to real estate from one party and invest it in another jurisdiction of the appeal lies in this court. State ex rel. Brown v. Hughes, 345 Mo. 958, 137 S.W.2d 544; Taylor v. Hughes, 363 Mo., 251 S.W.2d 94. That is precisely what the judgment sought and the judgment rendered in this case did.
Appellants' contention that other persons, known or unknown, who claimed or might claim some interest under clause three of the will, should have been made parties defendant herein makes its initial appearance in this court. No pre-trial motion or answer to that effect was filed in the trial court. Neither is it mentioned in the motion for new trial. Under both the new and old codes of civil procedure it is uniformly held that failure to raise a claim of defect of parties by a proper pleading, formerly by demurrer or answer and now by motion or answer, constitutes a waiver thereof. Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132, 139 [11, 12]. This rule is applicable to declaratory judgment actions. Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 953 [3], 125 A.L.R. 1149. See also Mickelberry's Food Products Co. v. Haeussermann, Mo.Sup., 247 S.W. 2d 731, 740 [11]. The case of Wolff v. Rager, 326 Mo. 222, 30 S.W.2d 1005, cited by appellants, deals with a statute governing proceedings in probate courts in the making of orders of distribution of estates, and is not in point. The failure of plaintiff to make such persons parties does not under the record here presented invalidate the judgment rendered.
The testimony, which consists of more that 200 pages, must be summarized. Plaintiff's evidence, which includes the testimony of himself and of several other witnesses, tended to show:
Plaintiff, aged 67 years in June, 1951, became acquainted with Mrs. Lee in 1941. He lived on and operated her dairy farm near Joplin for about two years while she was in California, and thereafter did carpentry work for her. In March, 1950, he built a porch on her home. She was then in a wheel chair. Her hands and feet were swollen. She had burned one hand and one foot in trying to cook. At that time she asked plaintiff to come in to her home and stay with her. She had gotten to where she could not cook, did not want to be alone and was unable to take care of her physical needs. Plaintiff moved into the home and stayed there until her death. The home was not clean. Dishes had been dropped on the floor and she could not reach them. There was urine in cans by the side of the bed and an odor about the place. The house yard was littered with lumber and trash.
Mrs. Lee suffered pain in her body, feet, legs and hips. Plaintiff cleaned up the home and yard. At that time he also worked at a nursery twenty-two miles from Joplin between *820 the hours of 8:00 a. m. and 4:30 p. m. Sometimes he stayed at the nursery during the work week and returned only on week ends, or oftener when the weather prevented his working. When he was at the home he fixed the meals, kept the house and yard, both of which were in a "pretty bad condition". Sometime after plaintiff went into Mrs. Lee's home, she bought a car and thereafter he drove it to and from his work, which permitted him to be in the home each evening, night and morning. He then prepared all the meals, kept the home clean and worked around the yard; took her riding in the car and to the doctor's office, to the bank and to visit friends. At times her speech became indistinct. Plaintiff's daughter-in-law sometimes came to the home and assisted Mrs. Lee with her hair and in taking baths. Plaintiff bathed her feet and rubbed liniment on them. Her condition worsened until her death on August 2, 1950, from coronary collapse, due to arteriosclerosis generalized.
Dr. Hurst testified that Mrs. Lee was suffering from her last illness from the time plaintiff came into the home until her death.
Defendant-appellants' evidence was:
Fred Bridges, a brother of Mrs. Lee and one of the appellant defendants, and who lived next door to her, testified that he and his wife, Elva Bridges, took care of her, visited her daily and his wife took meals to her every day, did her cleaning and some washing and sent some of her laundry out; that he and his wife took care of her up to the time of her death; that at his sister's house he talked with Mrs. Lee about plaintiff and she told him plaintiff was broke, wanted money, only came around when he needed help; that she felt sorry for him and was going to let him build a porch for her. Bridges helped plaintiff, cut the rafters and showed him how to build the porch. Mrs. Lee said she was going to have to run plaintiff off, that she could not feed him; that certain checks identified by him were issued by Mrs. Lee to plaintiff in payment for labor; that plaintiff told him Mrs. Lee just let him stay there until he got on his feet, that he was broke and had no place to live, and made similar statements the day after Mrs. Lee died.
Mrs. Elva Bridges testified that she was in and out of Mrs. Lee's home all the time, cooked her meals three times a day, almost two years, never saw plaintiff do any cooking; that she took care of Mrs. Lee, did part of her laundry, and part of it was sent out; that Mrs. Lee was able to dress herself; that she took Mrs. Lee's supper to her the day of her death, plaintiff was not there; that Mrs. Lee told her she had rented a room to plaintiff; that Mrs. Lee was able to get around by herself, not too fast, but she could get around.
Mrs. Ruth Nethery, an appellant-defendant, testified that she visited at the home of her aunt, Mrs. Nettie Lee; that Mrs. Lee called her about letting plaintiff stay there and said she was just renting him a room, said she took plaintiff for a short time because he was up against it; that Mrs. Lee was able to take care of herself.
Other witnesses testified that Fred and Elva Bridges helped to take care of Mrs. Lee. Mrs. Sentlinger testified that Mrs. Lee said she was just trying to help plaintiff by letting him stay with her but was getting tired of it.
In determining whether the credible evidence shows plaintiff entitled to qualify as a beneficiary under clause three of the will, we "review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Section 510.310 RS Mo 1949, V.A.M.S. See also Section 527.070 RSMo 1949, V.A.M.S.; Basman v. Frank, Mo.Sup., 250 S.W.2d 989, 992 [1]. The testimony in this case is extremely conflicting. According to plaintiff and his witnesses, plaintiff (and his daughter-in-law) attended to practically all of Mrs. Lee's needs during her last illness. According to defendants, her needs were attended in large measure by defendant Fred Bridges and Elva Bridges, and plaintiff was a liability rather than an asset to her. The trial judge, who both saw and heard the witnesses and was in a far better position to evaluate their credibility, evidently determined that somewhere in between the *821 extremes of their testimony were the facts. The finding of facts made by him expressly states that both plaintiff and defendant-appellant Bridges rendered some service, and it was his conclusion that plaintiff's service was substantially twice that of Bridges. He could reasonably so find and conclude through the process of accepting as true such portions of their respective versions as he believed and rejecting the portions he did not believe. Our own consideration of the evidence convinces us that the conclusion of the trial court as to the extent and relative value of the services rendered by plaintiff and Fred Bridges is as fair and equitable as can be determined under the circumstances of the case.
The last point urged by appellants is that even though the court was correct in finding that both plaintiff and appellant Bridges qualified as beneficiaries, error was committed in the apportioning of their respective interests. In support of this contention they cite texts and cases holding that where plural beneficiaries are named, or described by reference to a class which does not imply descent and distribution in accordance with the statute, a distribution per capita is intended, in the absence of other provisions in the will which show a contrary intention. We think that rule is not applicable in this case. Here the will provided that testatrix' property was to be taken "in payment of, and for their [whom the court adjudged to be plaintiff and appellant Bridges] services in so taking care of me." "Payment", in law, means the discharge of a pecuniary obligation by money or what is accepted as the equivalent of a specific sum of money. The Century Dictionary. Once it was determined that this property was to vest in plaintiff and Bridges in payment of their services and that the services of plaintiff were twice those of Bridges, payment therefor certainly meant that plaintiff's compensation should be twice that of Bridges. An even division of the property would result in over payment of Bridges and under payment of plaintiff.
The judgment of the trial court should be and is affirmed.
All concur.