## BLOCH et al. v. WOELLERT et al.
### No. 9712.

Court of Civil Appeals of Texas.
San Antonio.
Jan. 15, 1936.

Rehearing Denied Feb. 12, 1936.

D. Richard Voges, of Floresville, for appellants.

Knetsch, Stevenson & Knetsch, of Seguin, for appellees.

SMITH, Chief Justice.

Herman Koepp, a resident of Wilson county, died in December, 1929, leaving the following will:

"12–13–29

"This statement was made by Mr. Herman Koepp on the above date at the Santa Rosa Infirmary, Room 215, at 10-30 A. M. Patient was questioned by a nurse and all questions were translated from German to English.

"In case I should die, all the expenses should be first paid. For Mr. Helmke I bequeath $400. For Mr. Doege, a cripple, the same amount, $400. For Mr. Gustav Doege, $200, and Erna Barkmeyer also $200. Lutheran Church at La Vernia $200 toward building funds. Albertina Bloch, the property in La Vernia, that he was living on before he came to this hospital. After all expenses are paid and if any further money is left, Mr. Otto Vorphal and Paul Diekow are to be administrators of the estate and will portion out this money to his next nearest heirs.

"This will is made in sane mind and without an external influence."

The will, having been executed and witnessed with all the formalities required by statute, was duly probated, and in due course an administrator paid the several special bequests and devises provided for in the instrument. Thereupon the administrator brought this action in the district court and invoked a judicial construction of the re-

siduary clause of the will to determine to whom the residue of the estate, after payment of the special bequests and expenses of administration, amounting to the value of approximately $2,500, should go.

It was shown below that the testator, a bachelor, was in a hospital on account of an illness which shortly culminated in his death; that, being able to speak only in the German language, he expressed his testamentary intentions to his nurse, in that language, and the resulting will was the nurse's interpretation, in English, of the instructions given her in the German language; that the value of the "property in Lavernia" devised to Albertina Bloch was appraised at $100; that the legatees to whom special bequests were devised in the will, other than the Lutheran Church, were related to the testator, in varying degrees, as follows: "Mr. Helmke" and "Mr. Doege" were grandnephews; Gustav Doege was a nephew, Erna Barkmeyer, a niece, and Albertina Bloch, an only sister. "Mr. Doege," named in the will, was not an heir at law, since his father, Gustav Doege, is living and comes between him and any inheritance from the testator. The remaining devisees (other than the church) are heirs at law of the decedent. Besides those named in the will, there are twenty-two nieces and nephews, and two grandnieces, who are heirs at law of the testator, being the children or grandchildren of the testator's deceased brothers and sisters. So, it will be observed that the testator devised special bequests, discriminately, to heirs at law of varying degrees of relationship, as well as to a church, and to one who, although a distant relative, was not an heir at law.

The question presented is whether, as contended by appellants, the testator intended by his will that, after the payment of the special bequests, the residue should go to his heirs at law, generally, including those specifically named as beneficiaries, or, as contended by appellees, to his heirs at law, exclusive of those beneficiaries. The trial court held with the latter contention and ordered distribution of the residue of the estate to the testator's heirs at law, exclusive of those named in the will, who have appealed.

The decision must be resolved from the residuary clause of the will, that "after all expenses are paid and if any further money is left Mr. Otto Vorphal and Paul Diekow are to be the Administrators of the estate and will portion out this money to his next nearest heirs." The clause may be simplified to read as follows: "If any of my estate is left after payment of the special bequests and expenses of administration, the same shall go to my next nearest heirs."

■ The established rule is that it is the duty of courts, in construing a will, to ascertain, from the four corners of the instrument, the intention of the testator, and to give effect to that intention, if it does not contravene the law, or public policy.

■ In ascertaining from the will the intention of the testator, it is the duty of the court to look to the whole instrument, and give effect to its "every part, sentence, clause, or word," unless, indeed, the language used creates an ambiguity, in which event the court must construe the will in the light of such ambiguity. Lockett v. Wood (Tex.Civ.App.) 84 S.W.(2d) 798, and authorities there cited. It is true that in the case cited writ of error has been granted by the Supreme Court, but that action, presumably, was upon another holding in the case.

In view of the conceded fact that the phrase "nearest heirs" means legal heirs under the law of descent and distribution in this state, this inquiry may be narrowed to the meaning of the word "next" (in the phrase "next nearest heirs"), as used in the will, viewed from the four corners of that instrument, in the light of the circumstances bearing upon its execution.

The fact may well be kept in mind that the terms of the will were written in the language of a scrivener, who, obviously, was not versed in such matters, and who would not have in mind the legal effect or nice distinctions of the words used by her in undertaking to express in one language the intentions conveyed to her by another in a different language.

Now, appellees contend that the phrase, "next nearest heirs," means legal heirs of the testator other than, or exclusive of, those legatees (including heirs and nonheirs) specifically mentioned in the will; that the word "next" in the phrase was one of exclusion.

On the other hand, appellants contend, in effect, that the word "next," as used, is synonymous with the adjacent word "nearest," and that, therefore, the phrase could mean no more than "nearest heirs," or, heirs at law. If given that effect, then the residue of the estate must go to the testator's legal heirs, generally, including those to whom special bequests were devised.

If the questioned clause does not plainly express the intention that the residue of the estate shall go to the heirs at law, generally, then, certainly, the most that may be said of the clause is, that it is ambiguous, and does not clearly express an intention to exclude any of those heirs from participation in the residue. The rule is, in such cases of ambiguity, that construction of the instrument will be aided by the presumption that the testator intended that the estate should go in accordance with the laws of descent and distribution. Mc-Mullen v. Sims (Tex.Com.App.) 37 S.W. (2d) 141; Darragh v. Barmore (Tex.Com App.) 242 S.W. 714. We think that under that rule, this court has no recourse, but to hold that under the peculiar terms of the will here in question, the testator intended, not to exclude the named heirs from participation in the residue of the estate, after payment of the special bequests provided for, but to include them in that distribution.

We conclude, further, that a rational analysis of the will, and particularly the residuary clause, requires a like construction in ascertaining and giving effect to the testator's intention with reference to the residue; that by the terms, "next nearest heirs," the testator meant no more, nor less, than "nearest heirs," or, legal heirs.

For, in the first place, "next" means, simply, "nearest." 3 Bouvier's Law Dictionary (Rawle's Third Revision) p. 2348; Black's Law Dictionary (Third Revision) p. 817; 46 C. J. p. 472.

And, generally speaking, the two words are synonymous, interchangeable, or, as stated by the Supreme Court of South Carolina: "There can be no doubt that there is a shade of difference between the words 'next' and 'nearest.' It is likewise equally true that this shade of difference is often disregarded. Therefore, if by using the terms as synonymous the proper intention can be arrived at, we can legitimately do so." Speegle v. Sovereign Camp, W.O.W., 77 S.C. 517, 58 S.E. 435, 436.

Had either "next heirs," or "nearest heirs," been used in the place of "next nearest heirs," in the will in question, it would have meant the same thing, unless, indeed, the relation of the phrase to some other term or provision in the will gave it a peculiar, or specific, meaning different from its generally accepted implication. If, as appellees contend, the phrase had been intended to relate back to those heirs previously named as special legatees, and designed to exclude them, then, did it mean to include all heirs at law next after, or other than, those named? If so, that intention, or purpose, would have been lost in the confusion of the consequent necessary inquiry as to whether the testator thereby meant those heirs, or kin, next after the sister, who was named, or next after the niece and nephew, who were named, or next after the grandnephews, who were likewise named. If given the literal meaning claimed for it by appellees, then the residue must have gone to those heirs or, rather, kin, next beyond the grandnephews. The courts are not required, or permitted, to invoke such a strained and grotesque construction of ambiguous clauses or phrases, in order to give effect to every word used in the will; but, rather, will disregard surplus, or synonymous, words, such as "next" or "nearest," when the two are used together, if by doing so the intention of the testator will be made plain, and to conform to the spirit of the laws of descent and distribution, when such intention, so ascertained, is not negatived by express language, or necessary implication from express language, used in other parts of the will.

By selecting a church, and a distant kinsman not his legal heir, along with some of numerous legal heirs, as the objects of special bequests, and providing that the residue of his estate, if any, remaining after payment of the special bequests, should go to his "next nearest heirs," the testator could not have intended, in the absence of express language or necessary implication therefrom, to cut off his only sister with a bequest valued at only $100, and a niece and nephew and two grandnephews out of many of like degree of relationship, from participating in the residue, which constituted the bulk of his estate. This thought is strengthened by the fact that, of the special bequests, the church and the crippled grandnephew, neither of whom could otherwise have taken anything, were given $200 and $400, respectively, whereas, his sister, the only surviving child of his parents, was given only the "property in Lavernia, that he was living on before he came to this hospital," appraised at the value of $100, and the other two legal heirs, his nephews, were given only $200 each.

We construe the will to provide that, after payment of the special bequests therein provided, and the expense of ad-·

ministration, the residue of the estate of the testator shall go to all his legal heirs according to the laws of descent and distribution of this state, including those to whom special bequests were made in the will.

The judgment of the trial court is therefore reversed, and judgment here rendered as indicated above. The costs of this appeal are adjudged against appellees, but the costs incurred in the trial court are adjudged, as in the court below, to be paid out of the estate of the testator, before distribution.

Reversed and rendered.