St. Louis Union Trust Company, a Corporation, as Successor Trustee Under the Will of Isaac Shelby Warren, Deceased, Plaintiff, Appellant-Respondent, v. Henry J. Kaltenbach, Jr., Administrator c. t. a. of the Estate of Guy S. Warren, Deceased, and Thomas Penner, a Minor, by Richard F. Moll, Guardian ad Litem, Defendant, Appellants-Respondents.—No. 39268.—186 S. W. (2d) 578.

Division One, March 5, 1945.

Rehearing Denied, April 2, 1945.

*Bryan, Cave, McPheeters & McRoberts* for appellant-respondent (plaintiff).

*Thompson, Mitchell, Thompson & Young* and *Charles M. Spence* for appellant-respondent Kaltenbach.

*Richard F. Moll,* Guardian ad Litem, and *Francis M. Curlee* and *John P. McCammon* for appellant-respondent Thomas Penner.

1118

HYDE, J.—This is an action to construe a will, and for directions as to the distribution of the trust estate created thereby, brought by the Successor Trustee. The decree entered ordered distribution to the defendants, one-half each, after paying allowances for attorney's fees. All parties have appealed. Each defendant claims the entire fund (more than $70,000.00); and the plaintiff contends that defendants' allowances for attorney's fees are improper.

The testator, Dr. Isaac Shelby Warren, made this will in 1881 and died in 1889. The material parts thereof are as follows:

"I will and bequeath to my wife Anne Emily Warren and my four children, named Anne Lee Warren, Guy Warren, Thomas Bracken Warren and Aubrey Gill Warren my entire estate both personal (of every kind and variety) and my entire real estate, share and share alike equally with this exception which I definitely make in favor of Anne Lee Warren, in consequence of her affliction, she is to have ten thousand dollars in cash in addition to her equal share.

"It is my will that my entire real estate be held intact, & shall not be sold or divided until the youngest living child is twenty-one years of age, and the whole estate both real and personal to be held in trust for the benefit of the heirs named, . . .

"All bequests made in this instrument to my daughter Anne Lee Warren are made by me (her father) directly to Anne Emily Warren (her mother) in trust for the benefit & use of Anne Lee Warren during her natural life, *and at her death without children her estate to descend to next nearest of kin.*

"The whole estate (i mean income from it) may be used for the heirs jointly. None of the children during their minority, shall be allowed to use any part of the estate or income from it, excepting through their mother or . . . through her legal successor as trustee, . . . " (Italicised clause is part to be construed herein.)

The testator (who was not a lawyer) wrote this will himself. (The will so states.) Mrs. Warren settled the estate as executrix and served as trustee until 1898. Plaintiff was then appointed successor trustee of the trust for Anne Lee Warren. Prior to the death of the testator, one of the four children mentioned in the will, Aubrey Gill Warren died intestate, unmarried and without issue. Anne Lee Warren (Powe) died on September 5, 1942. Her husband (W. R. Powe), had predeceased her and she left no children nor descendants of deceased children surviving her. The trust terminated upon her death and it became the Trustee's duty to make distribution to the persons entitled thereto under Dr. Warren's will. At the time of Mrs. Powe's death, her brother (testator's son), defendant Guy Warren, was still living. Anne Emily Warren, testator's widow, had predeceased Mrs. Powe and so likewise had Thomas Bracken Warren, the other son of testator mentioned in his will. Thomas Bracken Warren had one son, Oliver Warren. Oliver Warren married and had one child,

defendant Thomas Penner. (Who was then known as Thomas Warren.) Thereafter Oliver Warren's wife divorced him and married one Alfred Penner. Thomas Warren's stepfather, Alfred Penner, with the consent of his wife (the mother of Thomas), both of whom were residents of the State of California, adopted Thomas Warren and his name was changed to Thomas Penner. Oliver Warren predeceased Anne Lee Warren Powe and left no issue or descendant surviving other than his son, who is now Thomas Penner.

Therefore, Guy Warren, the brother of Anne Lee Warren Powe and the son of the testator, and Thomas Penner, the testator's great-grandson, are the only two persons who could claim to be the heirs at law or nearest of kin of either Isaac Shelby Warren or Anne Lee Warren Powe.

Guy Warren claimed the entire estate on the theory that, as he was the son of the testator (and the brother of Anne Lee Warren Powe), whereas Thomas Penner was only the great-grandson of the testator and the great-nephew of Anne Lee Warren Powe, therefore, he (Guy Warren) was the "next nearest of kin". Guy Warren also claimed that the effect of the adoption of Thomas Warren by his stepfather was to take Thomas out of the Warren blood stream, and that he thereby lost all rights of inheritance or to be classified as an heir or next of kin of testator.

For Thomas Penner it is claimed that he is entitled to the entire estate because "next nearest" means "second nearest" so that the "nearest" (Guy Warren) was excluded. It is also claimed that his California adoption was not "in accordance with" the Missouri law and was ineffectual to deprive him of any right to inherit under the Missouri law. Thomas Penner was still a minor and Guy Warren died while this action was pending.

 There is a clear conflict of authority on the principal question herein involved. The early English view, supported in many American jurisdictions, is that "next of kin," "nearest of kin", and similar phrases, mean the nearest blood relation so that a brother or sister take to the exclusion of nieces and nephews; or a son or daughter take to the exclusion of grandchildren [Hammond v. Myers, 292 Ill. 270, 126 N. E. 537; Leonard v. Haworth, 171 Mass. 496, 51 N. E. 7; Swasey v. Jaques, 144 Mass. 135, 10 N. E. 758; Clark v. Mack, 161 Mich. 545, 12 N. W. 632; Locke v. Locke, 45 N. J. Eq. 97, 16 Atl. 49; In re Humphrey's Estate (Okla.), 141 Pac. (2d) 993; In re Everitt's Estate, 195 Pa. 450, 46 Atl. 1; Elmsley v. Young, 2 My. & K. 82, 39 Eng. Reprint 875, 3 L. J. Ch. N. S. 17; Withy v. Mangles, 10 Clark & F. 215, 8 Eng. Reprint 724, 10 L. J. Ch. U. S. 391.] Other jurisdictions hold that the persons included within this term are those entitled to take under the statutory distribution of intestate estates. [Close v. Benham, 97 Conn. 102, 115 Atl. 626; Lowrimore v. First Savings & Trust Co. (Fla.), 140 So. 891; New York Life Ins. &

Trust Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431; Snow v. Durgin, 70 N. H. 121, 47 Atl. 89; Godfrey v. Epple, 100 Ohio St. 447, 126 N. E. 886; Kello v. Kello, 127 Va. 368, 103 S. E. 633.] More of this conflict of authority may be found in 69 C. J. 221, Sec. 1254; 28 R. C. L. 254, Sec. 226; Annotation 11 A. L. R. 329; 28 Words & Phrases 630; See also American Law Institute Restatement of Property, Sec's. 307-310. The nearest Missouri ruling is Smith v. Eagan, 258 Mo. 569, 167 S. W. 971, where in the case of a phrase "to her nearest blood kin", in a deed from parents to a daughter, it was held that, upon the daughter's death without issue, the title vested in grantors to the exclusion of their other children, the brothers and sisters of the grantee. The father and mother, the grantors therein, took that view of the effect of their deed and divided the land among their other children who had survived the grantee, which was a very clear indication of the intent of these grantors.

The American Law Institute rejects both the view expressed in the opinions of some jurisdictions that "next of kin" denotes only blood relatives who take under the statute of distribution, and likewise, the view that "next of kin" denotes the nearest blood relatives. The rules adopted in its Restatement of Property are as follows:

Sec. 307. When a limitation is in favor of the "next of kin" or "relatives" of a designated person or is in other words of similar import then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are those who under the applicable local law would succeed to the personal property of the designated ancestor if such ancestor died intestate at the time when the group is to be ascertained in accordance with the rule stated in Sec. 308.

Sec. 308. When a limitation is in favor of the "heirs," "heirs of the body," "next of kin," or "relatives" of a designated person or in favor of other groups described by words of similar import and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.

It seems to us that, in most cases at least, construction according to these rules would be more likely to conform to the intent of a testator, who is a layman, in using such words as "next of kin" and words of similar import. Of course, if we can ascertain in which sense the testator herein used the words "next nearest of kin" in this will, we should construe them according to "the true intent and meaning of the ▮▮▮ testator." (Sec. 568, R. S. 1939, Mo. Stat. Ann.) We must determine this from the whole will. (See citations 1 Mo. Stat. Ann. 1027.) Analysis of this will shows that the testator had in mind

an equal division of his estate (except for the additional amount given to his afflicted daughter) ; that he desired it all to be held together until all of his children reached their majority; and that he intended for them all to get the benefit of the income from it during the period it was all held in trust. Thus it was likely that some of his children might marry and have children before they got their share of his estate. He evidently thought of children of a deceased child taking their parent's share because he provided how his daughter's share should "descend" in the event she died without children. No doubt he did this in her case because her share was the only share to remain in trust after all of his children reached their majority. In other words, he was thinking of and providing for his own family by leaving everything in trust to his wife to be applied by her for the benefit of his children until all were of legal age, and for his daughter throughout her life. It seems unreasonable to believe that, in providing such long time trusts, he intended to exclude the children of any child who should not survive until the termination of either trust.

In determining his meaning, the first question to be decided is whether the testator meant by the words "to descend to next nearest of kin" his own kin or the kin of Mrs. Powe. We think that the trial court correctly took the view that he meant his own kin. We think this is necessarily true because he said the estate was to "descend". It could only "descend" from him. It could not "descend" from Mrs. Powe because she had only a beneficial life estate (as beneficiary of the trust created for her) which completely terminated at her death so that there was nothing to "descend" from her to anyone. "Words with a well known technical meaning should be construed according to their technical meaning unless a contrary meaning clearly appears from the context of the will". [Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. (2d) 947.] Nothing to the contrary appears from the context of this will. In fact, it seems to us that this construction is completely in harmony with the context of this will and the intent of the testator.

However, it also seems clear that he did not use the words "heirs" and "next nearest of kin" in a technical sense. He said that his entire estate was to be held ("until the youngest living child is twenty-one") in trust "for the benefit of the heirs named." Of course, he did not mean "heirs" technically by this (because no one can name his heirs during his lifetime, 69 C. J. 218, Sec. 1250) as the persons named were his wife and children. It, therefore, does not seem reasonable to believe that he used the term "next nearest of kin" in its most technical sense to indicate that his relatives should take his estate strictly in the order of their blood relationship. It seems much more reasonable to believe that he used these words to include a collective group. That is, it was a gift to the class which would be composed of those to whom he had referred as "heirs" or

their descendants. As a group they are his "next nearest kin". We do not think that any special significance should be placed upon the use of the two synonymous words "next" and "nearest." [For a discussion of such use see Block v. Woellert (Tex.), 90 S. W. (2d) 653.] Considering his whole plan for disposition of his estate, it seems to us to be in harmony with the true meaning and intent of the testator to include all of the persons he named and their descendants (other than his daughter) in the group referred to as "next nearest of kin." Certainly no clear contrary intent can be found.

Furthermore, the use of the word "descend", the use of the word "heirs" in the sense of his wife and children, the trust for all his children, the separate life trust for his daughter, and such a class gift in remainder, all indicate the intent of the testator that the class should be determined at the time of his death. Our rule is that, in the absence of clearly expressed contrary intent, "those who compose a class described in a will as the testator's heirs, to whom a remainder or executory interest is given, are to be ascertained at the death of the testator". [Gardner v. Vanlandingham, supra, and cases cited.] The law favors vested estates because that usually better conforms to the testator's meaning. We think this rule should apply to the class herein designated as "next nearest of kin." [See Close v. Benham, 115 Atl. l. c. 627; 33 Am. Jur. 597, Sec. 137, p. 607, Sec. 146; American Law Institute ▉▉ Restatement of Property, Sec's 308-310.] Therefore, we hold that the grandfather of the minor defendant herein had a vested estate (subject to being divested if his sister died leaving descendants) which would descend to his descendants.

▉ The question remains as to whether the minor defendant lost this estate by reason of the adoption proceedings in California. His guardian ad litem herein points out the following ways in which these proceedings were not in accordance with Article 1, Chapter 56, Sec's. 9608-9616 (R. S. 1939) Mo. Stat. Ann. as follows:

1—No consent of his father was had and it was not alleged that he had abandoned his child for more than two years. (Sec. 9609.) Allegation was of abandonment for only one year.

2—No service of summons on or notice by publication to his father was shown. (Sec. 9611.)

3—No appointment of a guardian ad litem to represent the minor in the adoption proceedings was shown. (Sec. 9612.)

Moreover, while Sec. 9614, in providing for inheritance after adoption, says that an adopted child "shall be capable of inheriting from, and as the child of said (adopting) parents", and also says that such adopting parents "shall be capable of inheriting from and as the parents of said adopted child", it does not say that the adopted child is rendered incapable of inheriting from its natural parent. This section does say that "all legal relationship, and all rights and duties, between such child and its natural parents, shall cease and

determine"; but after saying that, it was still considered necessary to treat the matter of inheritance separately in subsequent sentences. It has been said that an adopted child "remains the child of its natural parents, and is not deprived of its rights of inheritance from them unless expressly so provided by statute." [Clarkson v. Hatton, 143 Mo. 47, 55, 44 S. W. 761, 762.] The last two sentences of Sec. 9614 specifically covering the matter of inheritance do not expressly so provide. We held in Shepherd v. Murphy, 322 Mo. 1176, 61 S. W. (2d) 746, that this section did deprive the natural parent of the right to inherit from an adopted child, but such parent has a choice in the matter which the child does not have. We also discussed the effect of this section in St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685, and Brock v. Dorman, 339 Mo. 611, 98 S. W. (2d) 672; but this exact question was not presented by the facts therein ruled. However, in any event, we do not think it would be reasonable to hold that a minor child loses his rights of inheritance through his own father by a proceeding of which his father had no notice and in which no guardian ad litem was appointed to represent and protect the interest of such child. We, therefore, hold that the original defendants were each entitled to one-half of the trust estate.

■ The court made allowances for attorney's fees to all parties to be paid out of the estate. The general rule is that "where a testator has expressed himself so ambiguously as to make it necessary or advisable to institute an action or suit to obtain a construction of the will, it is proper to order payment out of the estate of reasonable fees of attorneys of the party instituting the action or suit, irrespective of the outcome of the proceedings." [21 Am. Jur. 692, Sec. 553; Annotations 79 A. L. R. 536, 142 A. L. R. 1470; see also 69 C. J. 905-908, Sec's. 2072-2074.] This court recently followed this rule in Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S. W. (2d) 39, but does not do so where the purpose of the suit is to destroy the estate, Thatcher v. Lewis, 335 Mo. 1130, 76 S. W. (2d) 677. Clearly, the allowance to the trustee herein for attorney's fees was proper. The above cited authorities show that, in some states, attorney's fees are also allowed for all defendants in such suits. We do not authorize such allowances to defendants except where their efforts resulted in real benefit to the estate. [Trautz v. Lemp, 334 Mo. 1085, 72 S. W. (2d) 104; In re Thomasson's Estate, 350 Mo. 1157, 171 S. W. (2d) 553.] Here each defendant was contending for a construction under which he could obtain the whole estate for himself. Their contentions were solely for their own benefit and they are not entitled to any allowance out of the estate for merely seeking to benefit themselves.

■ However, it is urged on behalf of the minor defendant that an allowance should be made for him because the appointment of a

guardian ad Item was absolutely necessary to the disposition of the case. [See 897, (R. S. 1939) Mo. Stat. Ann.] This is true, and we do not doubt the authority of the court to make such an allowance, out of the estate, in case there are no other funds to pay the expense necessarily incurred ▆ by his guardian ad litem. Nevertheless, we do not think this should be done where a substantial recovery for the minor results. In a case like this where the two defendants were the real adversaries and each recovered half the estate, we think that the expenses of the minor's case should be paid out of what he recovered for the same reason that the other defendant must pay his own expense. It was, of course, proper for the court to protect the minor's interest by fixing the amount of these fees (which we do not find to be unreasonable) but they should be paid from Penner's own share in the estate.

The decree is affirmed as to the construction of the will and the distribution of the trust estate; but the part thereof relating to attorney's fees and costs (the last two paragraphs) is reversed and remanded with directions to require payment out of the estate of only the allowances made to the trustee for attorney's fees and costs; each of the defendants to pay their own attorney's fees. All concur.