Victor BOLLENGER, Administrator w.w.a., d.b.n. of the estate of Theodore Harris, deceased, and M. E. Fitzpatrick, as Moderator of the Lawrence County, Missouri, Baptist Association, and the Lawrence County, Missouri, Baptist Association by M. E. Fitzpatrick, a member of the class, Appellants,

v.

Arleen BRAY, Administrator of the estate of Grace Cox, Arleen Bray, individually, and Arleen Bray, as guardian of the estate of A. E. Cox, Incompetent, Hattie B. Thomas, and Raymond Thomas, individually and as Administrator of the estate of Lulie A. Harris, deceased, Respondents.

No. 51773.

Supreme Court of Missouri,
Division No. 2.

Feb. 13, 1967.

Almon H. Maus, Monett, for appellants.

Ratican & Faulkner, William A. Ratican, Jr., Aurora, Oral H. McCubbin, Mt. Vernon, for respondents.

PRITCHARD, Commissioner.

The issue is whether decedent's widow (now also deceased), life devisee of his estate, may validly have allowed to her as part support and maintenance almost ten years after administration was begun, the bulk of his estate as against the contention that she had no power to consume the estate absent an actual need therefor. The underlying issue is the sufficiency of a duly published notice of final settlement in the estate of January, 1952 (which settlement was not then made), to support a final settlement and discharge of the executrix on April 22, 1960. We have jurisdiction at least by reason of the amounts in controversy, commingled funds claimed by appellants from various respondents, exceeding $15,000.

The facts are: Theodore Harris and Lulie A. Harris, each having been previously married, were married in 1944. Theodore had no children. Lulie had two children by her prior marriage, Grace Cox and Hattie Thomas. Theodore and Lulie were each 72 years of age at the time of their marriage and left no children thereof. Theodore died first, on November 21, 1950, leaving a will dated March 13, 1948, which was admitted to probate November 24, 1950, the here relevant portions of which are:

"SECOND: If I am survived by my beloved wife, Lulie A. Harris, then, as of the date of my death, I give, devise and bequeath all of the residue of my estate, whether real, personal or mixed, wheresoever situate, and whether now owned or hereafter acquired, unto my said wife, if she survive me, TO HAVE AND TO HOLD DURING HER NATURAL LIFE, with full and complete discretion capacity, authority and power to her, my said wife, if she survive me, to sell, grant, convey and deliver, in such manner, on such terms and at such price as she may best elect, all or any part of said residue, and make perfect record title thereto and create perfect ownership thereof, all absolutely and forever the same as I could do if living, and collect and reinvest the proceeds thereof or any insurance thereon during her natural life. The life estate here provided for my said wife, if she survive me, to be in lieu of her dower in my estate; and I appeal to her to accept such provision; and it is my wish that she consume so much of my estate as may be required for her support in the manner to which she is accustomed, conserving the balance for the purposes hereinafter stated.

\* \* \* \* \* \*

"FOURTH: If I am survived by my said wife, then at her death I give, devise and bequeath all of the remainder of my estate as aforesaid in the same manner and under the same conditions as in Section THIRD hereof stated for the residue of my estate in event my said wife should predecease me."

Lulie was appointed executrix of the will, and on November 25, 1950, filed inventory: Lots 5 and 6 in Block 3 of the Original Survey of Pierce City, appraised at $5,000; bank account $267.40; John W. and Nadine Mulkey note $3,570; M.F.A. Dairy Products Co. certificates $1,200; W. L. Bray note $1,334; 1939 Chevrolet automobile $315; Theodore Moennig note, dated February 10, 1948, $10,000; a total of $16,686.40 personal property and $5,000 real property. Title to the real estate is not here in issue.

Lulie charged herself with the collection of certain principal and interest payments, totaling $1,715, on her first settlement approved on August 16, 1951, and on that same date petitioned for $500 maintenance and support during administration, an order being made granting same on that date. Then on January 3, 10, 17 and 24, 1952, she caused notice to be published that she would file final settlement in Theodore's estate at the next term of the Probate Court of Lawrence County to be held on February 11, 1952, on which date she *did not* file such settlement and no other action was taken by that court on that date. An approved first annual settlement was made by Lulie on February 15, 1952, on which she again charged herself with principal and interest payments totaling $570 on notes and certificates. An order of general continuance in the estate was made from term to term until January 1, 1956.

On April 22, 1960, Lulie, as executrix, filed a petition in the probate court for an order allowing her individually the sum of $200 per month for the period of 100 months preceding that order for her support and maintenance. The court granted the order, and $200 per month thereafter until further order of the court, and assigned the Moennig note, balance $9,000, to Lulie in partial payment of the allowance. No formal notice of this petition and order was given to the Lawrence County, Missouri, Baptist Association (the Moderator and his successors of which were residuary legatees under Theodore's will).

In a final settlement also dated April 22, 1960, Lulie charged herself with $2,060 paid on the Mulkey note; $1,200 on the M.F.A. certificates; $1,034 on the Bray note; $315 on the automobile; $2,800 interest on the Moennig note, and $9,000 principal thereon; a total of $16,409. A short time after the filing of the final settlement Lulie died on June 20, 1960, at the age of 87 years. For her support and maintenance she claimed credit for $16,971.31 for assets paid to herself individually. The probate court approved the final settlement on the same date and discharged Lulie as executrix.

Other than the published notice of January, 1952, no notice of the filing of the final settlement of April 22, 1960 was made, and no formal notice thereof was given to the Lawrence County, Missouri, Baptist Association.

 We rule that the January, 1952, published notice of *final* settlement was not sufficient to support the actual final settlement made in April, 1960, more than eight years later. Note that the published notice stated that Lulie would make a final settlement at the next term of court to be held February 11, 1952. She did not in fact then make a final settlement which is for the purpose of auditing her accounts and making a final distribution to the person or persons entitled to the residue of the estate, but made an annual settlement on February 15, 1952, thus continuing the administration of the estate. She must be held to have abandoned her published intention to make a final settlement and wind up the estate. Of course, at that time and from this record, there was apparently no intention upon her part of then invading the corpus of her life estate for needed support and maintenance. That came later, in April, 1960. The case of Hewitt v. Duncan's Estate, 226 Mo.App. 254, 43 S.W.2d 87, is in point. There, the executrix caused notice of final settlement to be published in which it recited that final settlement of the estate would be made in the Probate Court of Clinton County on August 9, 1926. No settlement was then made and the probate court made general orders of continuance up to April 28, 1927, but none thereafter. On May 31, 1928, a purported final settlement was made and the executrix was ordered discharged upon filing inheritance tax receipts. Plaintiff's claim for attorney fees for services rendered the executrix was thereafter filed on August 25, 1928. The court held that the notice that final settlement would be made on August 9, 1926, was not sufficient to confer jurisdiction on the probate court to render the

judgment approving the settlement filed May 31, 1928. Cited was the early case of Brashears v. Hicklin, et al., 54 Mo. 102, where in 1861 the plaintiff executor published notice that he would make final settlement at the next term of the probate court. At the next term he appeared, and on his motion his settlement filed was continued to the next term. No further action or notice of the settlement was taken for nine years until 1870, when plaintiff appeared, withdrew the 1861 settlement and filed a corrected one claiming money due him for advances to Hicklin above his residuary interest in the estate. The court there said, loc. cit. 104, "The main reason why the law requires notice from an executor or administrator, that he will make final settlement of an estate, is that all parties interested may be advised, and appear at the proper time to examine the accounts and protect their rights. * * * It could not be reasonably expected that the parties interested in the estate would appear at every term of the Probate Court for nine years, to see whether the executor intended to make his final settlement." The court held that there was not a sufficient compliance with the law in the matter of publishing notice, and that the settlement had no binding force on the parties interested in the estate. See also Thompson's Estate v. Martin, Mo.App., 133 S.W.2d 677, 678 [1], where a notice was given that the estate would be finally settled at the November, 1933, term of the probate court, but no settlement was made at that time. Annual settlements were made until August 6, 1937, when a purported final settlement was filed dated August 2, 1937. No notice was given that a final settlement was given at that time, and the court held that "consequently, the court had no jurisdiction to entertain it." For a case analogous in principle, see In re Jackson's Will, Mo.App., 291 S.W.2d 214, where an application for appointment of a substitute trustee was filed in the circuit court, but was continued from term to term, and without additional notice to interested parties was acted upon; 34 C.J.S. Executors and Administrators § 846, p. 979.

The fact that no additional notice was given by Lulie of her final settlement does not satisfy the requirements of due process of law—the opportunity of interested residuary legatees to be heard, and did not comply with either the requirements of the old Probate Code, § 465.160, RSMo 1949, or the new Probate Code, §§ 473.587, 473.590, RS Mo 1959, V.A.M.S. Appellants are not barred from attacking the final settlement here upon which Lulie, as executrix, had credited herself with a portion of her individually and retroactively allowed sums for support and maintenance (on her petition for which we note there was no administrator ad litem appointed to represent the estate as against her adverse claim).

▆▆▆ Under the terms of Theodore's will Lulie clearly had a life estate in the residue of his property. Respondents agree, but contend the two powers conferred upon her by paragraph Second of the will: (1) to sell and convey all or any part of the estate in such manner and on such terms and at such price as she might deem best; and (2) "it is my wish that she consume so much of my estate as may be required for her support in the manner to which she is accustomed * * *," showed an intention of Theodore that Lulie be supported for the remainder of her life *from his estate* (emphasis respondents'). No doubt that was Theodore's intention, but the words that she might consume so much of his estate *as might be required* for her support *in the manner to which she is accustomed* added the requirement, as contended by appellants, that there be a necessity for her encroachment upon the corpus of her life estate. The cases so hold: Cook v. Higgins, 290 Mo. 402, 235 S.W. 807, 812, where this court en banc disapproved Griffin v. Nicholas, 224 Mo. 275, 123 S.W. 1063, and adopted the minority opinion therein that a power to sell (and consume) was coupled with a limitation based upon the existence of a fact—that the sale was reasonably necessary for the widow's comfort and support. See also Citizens' Bank of Lancaster v. Foglesong, 326 Mo. 581, 31 S.W.2d 778;

Graham v. Stroh, 342 Mo. 686, 117 S.W.2d 258; Palmisciano v. Staltari, Mo., 175 S.W.2d 793; Smith v. Smith, 359 Mo. 44, 220 S.W.2d 10; Gent v. Thomas, 363 Mo. 528, 252 S.W.2d 345; Edwards v. Payne, Mo., 307 S.W.2d 657; and Morisseau v. Biesterfeldt, Mo., 345 S.W.2d 210, all reaffirming the principle in Cook v. Higgins, supra, that there must be a reasonable necessity of the life tenant to justify invasion of the corpus of the estate. We adhere to that principle in this case, and it leads us to appellants' contention that the trial court erred in excluding their offered evidence of the surrounding circumstances of testator, and of the need of Lulie A. Harris for support and maintenance from the corpus of the estate.

◼◼ Clause Second of Theodore's will is not ambiguous. His intention is clear to devise to his wife a life estate in all his property, with a power of sale for reinvestment purposes. No extrinsic evidence is therefore admissible to ascertain his intention in benefiting his wife, Lulie. Burrier v. Jones, 338 Mo. 679, 92 S.W.2d 885; Winkel v. Streicher, 365 Mo. 1170, 295 S.W.2d 56; In re Sidebottom's Estate, Mo., 327 S.W.2d 270. There is, however, a limitation placed upon Lulie's right to invade the corpus of the estate in the words: "and it is my wish that she consume so much of my estate *as may be required* for her support *in the manner to which she is accustomed,* conserving the balance for the purposes hereinafter stated." (Emphasis added.) Evidence is admissible to show what was required by Lulie for her support and to show in what manner she was accustomed to be supported. The trial court erred in refusing the proffered evidence of these latter matters in determining the amount of the estate to which Lulie was absolutely entitled. Compare McMahan v. Hubbard, 217 Mo. 624, 118 S.W. 481, 484; and cases involving the performance of a condition to a devise or bequest imposed by a testator, Hovey v. Grier, 324 Mo. 634, 23 S.W.2d 1058; Ray v. Nethery, Mo., 255 S.W.2d 817; Lehnhoff v. Theine, 184 Mo.

346, 83 S.W. 469. A further inquiry would be the matter of Lulie's good faith in taking as an allowance for past support 200 months at $100 per month, she having a duty to conserve the balance above what was necessary for her support to the benefit of the residuary legatees. "A trustee who is also a beneficiary and who is given a power, or discretion, to·invade the trust principal for the accomplishment of the settlor's purpose has a fiduciary obligation to the remainderman to confine his, the trustee's, demands within reasonable limits." 90 C.J.S. Trusts § 349, p. 625.

The judgment is reversed and the case is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, Acting P. J., and DONNELLY and STORCKMAN, JJ., concur.

EAGER, P. J., not sitting.