Martha MAGRUDER, Plaintiff-Appellant,

v.

Ruth MAGRUDER and John Allen Magruder et al., Defendants-Respondents.

No. 36061.

Missouri Court of Appeals,
St. Louis District,
Division Three.

June 24, 1975.

Rolin T. Boulware, Kenneth D. Schloman, Shelbina, for plaintiff-appellant.

Bollow, Crist, Bollow & Wallace, Shelbina, for defendants-respondents.

GUNN, Judge.

This appeal arises from a declaratory judgment action brought by plaintiff-appellant Martha Turney Magruder to construe the will of her testator-husband, Glenn P. Magruder, and to quiet title to 40 acres of land owned by the testator at the time of his death. In 1925, the testator moved into the Dan and Bessie Turney home located on 80 acres in Shelby County. He lived in the Turney home and farmed their 80 acres until his death in 1969. In 1941, the testator bought for himself 40 acres of land adjoining the Turney farm. After Dan Turney's death in 1958, the testator executed his will dated July 21, 1959 whereby

he gave a life estate in his property with power of sale for support and maintenance to Bessie Turney and the Turneys' daughter, Martha Turney. Martha Turney was subsequently married to the testator and is now plaintiff-appellant, Martha Turney Magruder. By the terms of the testator's will, the remainder of his estate was to go to his brother and sister, John Allen Magruder and Ruth Magruder, defendants-respondents. Bessie Turney died in June, 1965. The testator and Martha Turney (now plaintiff-appellant, Martha Turney Magruder) were married on November 7, 1965 and continued to live on the Turney 80 acre farm. On October 10, 1969 the testator died survived by his wife, Martha Turney Magruder, and defendants-respondents, John Allen Magruder and Ruth Magruder, his brother and mentally retarded sister.[1] The testator was possessed of the 40 acre tract of land and a one half interest in 9 sows at the time of his death.

The portion of the testator's will which is the subject of this litigation provides:

"THIRD: All the rest, residue and remainder of the property which I may own at the time of my death, both real and personal, and of every kind and description, wherever the same may be situated, I give, bequeath and devise to Martha Turney (now Martha Turney Magruder, testator's wife) and Bessie A. Turney (deceased) for and during the term of their natural life, and the natural life of the last survivor thereof, *and in the event that it becomes necessary, in their opinion or in the opinion of the survivor thereof, for them or the survivor thereof to sell said property or any part thereof for their support and maintenance or the survivor of them, then I authorize, empower and direct them or either of them to sell such part or all of said property as may be necessary for their support* or the support of the survivor thereof, and to make contracts and deeds as may be necessary to convey the same to the purchaser or purchasers thereof, and at the death of the last survivor thereof the remainder of said property shall go to and vest in fee in my sister and my brother, Ruth Magruder and John Allen Magruder, in equal parts, share and share alike." (emphasis added)

On March 12, 1973, Martha Turney Magruder, believing it necessary to sell the testator's 40 acres for her support and maintenance, entered into a sales contract for the sale of the land for $22,000. To resolve any controversy as to claims of interest in the 40 acres and to construe her husband's will as to her rights thereunder, Martha Turney Magruder brought suit for declaratory judgment naming as defendants John Allen Magruder and Ruth Magruder, the testator's brother and sister, who were remaindermen under the will. Also named as defendants were numerous other persons and unknown persons who might possibly have some claim to the 40 acres. Inasmuch as the testator's sister, Ruth Magruder, was a mental incompetent, the trial court appointed a guardian ad litem to represent her interest in the litigation.

The trial court found that defendants, except for defendants-respondents Ruth and John Allen Magruder, had no right, title or interest in the 40 acres of the testator and divested them of any claim of title in and to the 40 acres. No appeal has been taken from the portion of the judgment divesting the other defendants from any interest in the 40 acres, and it stands.

The trial court also found that Martha Turney Magruder did have the right under the will to sell the 40 acres but imposed a trust on the assets from the sale of the land so as to preserve the assets for the remaindermen Ruth and John Allen Magruder. The trial court also ordered that the guardi-

---

**1.** The testator was also apparently survived by two married daughters not affected by or involved in this litigation.

an ad litem for Ruth Magruder be paid his fee of $710 from the trust assets.

Martha Turney Magruder has appealed from the judgment imposing the trust and awarding the fee for Ruth Magruder's guardian ad litem. Martha Turney Magruder insists that she clearly has need of the assets from the sale of the 40 acres of land for her support and maintenance. In support of her position, she testified that since the testator's death she has been receiving the income from the 40 acre tract under a share crop arrangement; that while she owns an undivided five eighths interest in the 80 acres upon which she lives, she has only been receiving a one half interest in the income therefrom; that she possesses a life estate in the residence in which she lives and has a one third interest in nine hogs and 50 shoats. She receives as income $78.20 a month in social security, has a checking account of about $200 to $300 and United States Government bonds of approximately $4,000. While income figures were not precise, apparently in 1972, the year prior to trial and the only year for which figures were available, Martha Turney Magruder had income of about $1,800 on the 80 acres and $2,000 on the 40 acres. She had approximately $500 in crop expenses and $197 in taxes. She did not earn enough in 1972 to file a federal income tax return, and she knew of debts owed by her of approximately $400. Her home was in need of minor repairs. There were no exact figures as to how much net income she received from her farming operations, but from the evidence presented it would not exceed $3,100 a year.

Martha Turney Magruder testified that she believed it necessary to sell the 40 acres acquired from the testator for her support and maintenance, because "I am 69 and I think I need the money to live on so I won't have to worry about bills and things . ." It was her intention to use the proceeds only for her own needs; there was no plan on her part to change her pattern of spending: "I have been very thrifty. I have never been a spendthrift and I don't intent to start now, but I do need a living." It was also her testimony that she did not intend to use all the proceeds of the sale nor squander or waste the assets so that Ruth and John Allen Magruder would be left with nothing. Martha Turney Magruder has experienced two heart attacks and is afflicted with very high blood pressure requiring constant medical attention.

The trial court found that Martha Turney Magruder had the right and power to sell the land devised to her by her husband, but in order to protect the interests of the remaindermen, John Allen Magruder and Ruth Magruder, the trial court imposed a trust on the proceeds from the sale of the property, finding that Martha Turney Magruder was a proper person to act as trustee. Under the court's judgment, the proceeds of the sale of the 40 acres were to be invested by Martha Turney Magruder, as trustee, only in United States obligations, savings accounts and time deposits and savings and loan association accounts. The trial court found no present need to invade the corpus and ordered the trustee not to invade the corpus without prior court approval, with the trustee accounting to the court annually.

In her appeal, Martha Turney Magruder asserts that the trial court erred: 1) in imposing a trust on the proceeds of the sale; 2) in holding that there was no present need to invade the corpus of the trust; 3) in limiting the investments which could be made by her with the assets of the sale of the property; 4) in allowing a $710 fee to Ruth Magruder's guardian ad litem. The basic thrust of Martha Turney Magruder's challenge to the trial court's judgment is that the trial court substituted its judgment for the will of the testator.

Under the circumstances of this case, we believe that the imposition of a trust on the assets of the sale of the testator's 40 acres of land was unwarranted, and

we reverse the judgment of the trial court. In reaching our decision, we are guided by certain maxims concerning will construction. A court may not make a new will, rewrite a will, attempt to make what may seem to be a more equitable distribution nor impart an intent to the testator that is not expressed in the will. *Mercantile Trust Co. v. Muckerman,* 377 S.W.2d 355 (Mo.1964); *In re Estate of Wahlin,* 505 S.W.2d 99 (Mo.App.1973); *In re Howe's Estate,* 379 S.W.2d 154 (Mo.App.1964). It is presumed that the testator knows the legal effect of the language he uses in a will. *Neagle v. Hitt,* 425 S.W.2d 102 (Mo.1968); *Lehmann v. Janes,* 409 S.W.2d 647 (Mo.1966). The guide for the court in the construction of a will is the intent of the testator as gathered from the language from the will read as a whole. *St. Louis Union Trust Co. v. Morton,* 468 S.W.2d 193 (Mo.1971). Thus, it is only if the language of the will is ambiguous or wanting in clarity that the court is authorized to look at surrounding facts, circumstances and conditions affecting the testator at the time the will was executed. *In re Estate of Wahlin, supra; Seltzer v. Schroeder,* 409 S.W.2d 777 (Mo.App.1966).

We find that a reading of the testator's will does not afford a basis for judicial interference by construction of its clear terms through the imposition of a trust. The situation before us is closely analogous to *Husser v. Markham,* 210 S.W.2d 405 (Mo.App.1948). There, the terms of a will devised a life estate to the husband in real estate where the husband was to be the sole judge of the amount "required for his maintenance" and "necessary for his comfort" and the remainder to the testatrix' sister. These terms were determined to be clear and unequivocal and held to afford no basis for judicial interference by engaging in construction of the will. It was also held that anticipitated waste was not a sufficient

ground for relief; that it was not the obvious intent that the life estate be set aside in trust to protect the interest of the remaindermen. Such is the situation before us.

█ In analyzing the facts of this case, the testator's language strongly indicates the intention to permit his wife, Martha Turney Magruder, to use such property of her life estate as, in her opinion, was necessary for her support and maintenance. The respondents argue that Martha Turney Magruder has other assets, such as her 80 acre farm and her own government bonds, which she should exhaust before tampering with the life estate; that there is no necessity for any plunder of the life estate. Where the power of disposition is dependent upon a life tenant's own personal opinion that such action is necessary for support and maintenance, the exercise of that power is not dependent upon the existence or showing of the fact of reasonable necessity. The written language of the testator disposing or devising a life estate to Martha Turney Magruder does not impose the added requirement of reasonable necessity before the sale and encroachment on the corpus could occur. Even if limits of "reasonable necessity" are read into Martha Turney Magruder's power of disposition of the life estate devised to her, there is no requirement that she be totally destitute before being able to invade the corpus for her support and maintenance. *Morisseau v. Biesterfeldt,* 345 S.W.2d 210, 213 (Mo.1961).[2]

█ The trial court found "that the sale of the 40 acres by the plaintiff, Martha (Turney) Magruder, was reasonably necessary for her support and maintenance as she reasonably contemplated the facts at the time she entered into the contract;" that although the trial court could not find as a matter of law any need to sell the 40 acres, it did "recognize that Martha (Tur-

---

**2.** "Reasonable necessity" is an objective standard to be shown to justify invasion of the corpus where a testator has willed that "it is my wish that she (life tenant-wife)

consumed so much of my estate as may be required for her support in the manner to which she is accustomed . . ." *Bollenger v. Bray,* 411 S.W.2d 65, 68 (Mo.1967).

ney) Magruder could and did, in her opinion, feel the need to sell. This opinion was based on her consideration of probable future needs due to health. It was not a capricious act. The will gave her the right to determine the need for the sale." Therefore, the court found that under *Gent v. Thomas*, 363 Mo. 528, 252 S.W.2d 345 (1952), Martha Turney Magruder had sufficient justification, right and power to sell the land without the consent of the remaindermen. And indeed she did have such right and power. However, the trial court found the necessity to preserve the interest of the remaindermen by imposing the aforesaid trust provisions. The respondents, John Allen and Ruth Magruder, do not challenge Martha Turney Magruder's right to convey the property but do insist that the trust be imposed, arguing that before there can be any invasion of the corpus by the life tenant, her personal assets must first be exhausted. Recognizing that there is a conflict of authority whether a life tenant's other means of support are to be considered in determining whether the life tenant may invade the life estate corpus, the Missouri Supreme Court in *Winkel v. Streicher*, 365 Mo. 1170, 295 S.W.2d 56 (banc 1956), held that the better rule is that when a testator, without other indication, gives the life tenant the right to entrench upon the corpus for his maintenance and support, it is intended that such support be received without regard to the beneficiary's other income. See also *Morisseau v. Biesterfeldt, supra.*

It has been stated:

"In the great majority of cases, it is held that if the grant of power [of disposition—as for support and maintenance] is otherwise full or general in its terms and the determination of the question is one which involves the exercise of judgment and discretion, the decision made in good faith by the life tenant himself is final. It is likewise held in these cases that the amount required or used by the life tenant for his support and maintenance rests entirely in his honest judgment and discretion, which cannot be controlled or limited by the courts in the absence of bad faith or fraud." 51 Am.Jur.2d Life Tenants and Remaindermen, § 66 at p. 293 citing Annots., 2 A.L.R. 1243, 1285 et seq., 27 A.L.R. 1381, 1384, 69 A.L.R. 825, 830, 114 A.L.R. 946, 951.[3]

There has not been any showing or suggestion of any bad faith or fraud on the part of Martha Turney Magruder. Hence, there has been no need shown for the exercise of judicial interference with Martha Turney Magruder's actions with regard to expenditures. This is not to say that the remaindermen do not have some protectable interest or that the life tenant does not have an obligation to preserve the estate for the benefit of the remaindermen. But the power of disposition of real estate by a life tenant is not inconsistent with the life estate or remainder. *Threlkeld v. Threlkeld*, 238 Mo. 459, 141 S.W. 1121 (1911). The life tenant retains only the life interest in the proceeds from the disposition by sale of the real property, and the remaindermen retain their claims to the remainder following the life estate. Generally, a mere change in the form of real property as from real estate to money does not enlarge the estate of the life tenant; the proceeds of the sale simply take the place of the real estate and are subject to the same disposition as the real estate. In this case, Martha Turney Magruder would have the right to the use of any proceeds for her support and maintenance during her life. *St. Louis Union Trust Co. v. Morton, supra; Guthrie v. Crews*, 286 Mo. 438, 229 S.W. 182 (1920).

**3.** See Simes and Smith, the Law of Future Interests, 2d Ed.1956, § 1712, for a treatment of the law regarding the requirement of security by a life tenant absent an expressed demand by a testator for security.

Whatever remains at Martha's death must be distributed to the remaindermen.[4]

■ The law is clear that in a limited sense, the life tenant—in this case, Martha Turney Magruder—holds the corpus of the life estate in trust for the remaindermen with the fiduciary obligation not to commit waste thereto and to preserve the property for ultimate transmission to the remaindermen, subject, of course, to the life tenant's right to invade as conferred by the will. *Bollenger v. Bray*, 411 S.W.2d 65 (Mo.1967); *Muzzy v. Muzzy*, 364 Mo. 373, 261 S.W.2d 927 (1953); *Cole v. Lamb*, 461 S.W.2d 14 (Mo.App.1970). But it is also clear that Martha Turney Magruder was given broad powers to invade the corpus for her support and maintenance without the stricture of posting a security for the life estate. In this regard, this case is similar to *Smith v. Smith*, 359 Mo. 44, 220 S.W.2d 10 (1949), where it was said, l.c. 14:

> "Although testator apparently intended his heirs at law should have the residue after the death of his wife, Dora, and although Dora's power to consume or diminish the residue is qualified so as to be exercisable only for her own use and comfort, the testator did not expressly require her to give security for the protection of the heirs at law against her waste, or her conversion of the property to some other purpose. Since Dora's welfare was the testator's primary thought and since, as we have noted, he directed that she should not be required to give bond as executrix, it could be reasonably said he manifested an intention she should not be required to secure the corpus to the heirs at law or, as the decree puts it, to the 'remaindermen.'"

We have previously noted, as in *Smith v. Smith, supra*, that there is no evidence of Martha Turney Magruder's intent to commit waste or squander the assets of her life estate. Thus, the need for the imposition of a trust or the giving of security is not necessary, and such imposition would be dissonant with the testator's intent. See also *Guthrie v. Crews, supra*, and *Woolley v. Dorl*, 68 S.W.2d 869 (Mo.App.1933), which hold that a trust for preservation of funds should not be imposed upon a life tenant receiving a life estate under terms similar to those in this case.

*Bollenger v. Bray, supra; Masterson v. Masterson*, 344 Mo. 1188, 130 S.W.2d 629 (1939); *Phipps v. Doak*, 235 Mo.App. 659, 145 S.W.2d 167 (1940), relied upon by respondent as authority for imposing the trust are not apposite, for in those cases, the life tenant's powers under the will were more restrictive than those granted Martha Turney Magruder. So here, without evidence of waste and with the grant of use the testator's funds, we believe the following statement in *Griffin v. Nicholas*, 224 Mo. 275, 123 S.W. 1063 at 1073 (1909), to be particularly appropriate:

> "We do not mean to say that if she (the life tenant) was recklessly or fraudulently wasting the estate the court could not interpose to restrain her, but until a showing is made to justify the chancellor in laying his hands on her the disposal of the property is in her discretion."

■ Respondents refer to the following wording in the testator's will:

> ". . . in the event that it becomes *necessary in their opinion* . . . for them . . . to sell said property or any part thereof *for their support and maintenance* . . ., then I authorize, empower and direct them . . . to sell such part or all of said property *as may be necessary for their support* . . . ." (emphasis added)

Respondents then suggest that the foregoing language presents a dual subjective-ob-

---

4. For discussion on rights of remaindermen see: Annot., Rights as between estate of life tenant and remaindermen in respect of proceeds of sale or disposition made in exercise of power given to life tenant, 47 A.L.R.3d 1078 at 1082, 1083 (1973).

jective standard as to Martha Turney Magruder's powers under the will. Respondents argue that Martha may apply the subjective standard as to determining whether the property may be sold, that is, it may be sold if in Martha's opinion it becomes necessary. But respondents would inject an objective standard as to the use of the property for her support, that is, an independent opinion other than Martha's (for example, the trial court's) to determine if, in fact, the proceeds of the sale are needed for Martha's support. We reject respondents' argument in this regard, as it paints with too broad a brush on the plain meaning of the testator's will. It is manifest from the wording of the testator's will that it was the testator's intent that Martha was to determine whether the proceeds were necessary for her support, subject, of course, to the limitation that the proceeds not be wasted. But the need for support is to be determined initially by Martha Turney Magruder.

▮ In her testimony, Martha Turney Magruder indicated that she had no plans for separating her personal funds and those received from the sale of the testator's 40 acres. Respondents raise the very practical and disquieting point that if the testator's assets are commingled with Martha Turney Magruder's other assets, the life estate will lose its identity and become dissolute. Respondents asserverate that once the life estate identity is lost through the commingling of funds that no method exists for determining whether the life estate is being preserved for the remaindermen consistent with the terms of the will or what, if any, remainder will pass to the remaindermen upon the death of the life tenant. Martha Turney Magruder, too, has recognized the problem of commingling and has offered to place the funds from the sale of the 40 acres and any other assets received by her from the testator as a life tenant in a separate account and to maintain such an account. Under the circumstances of this case we find no legal rubric for imposing upon Martha Turney Magruder the obligation to maintain a separate account for funds and assets received as a life estate from the testator. And, we are aware of the legal aphorisms we have heretofore recited which say that courts are not to rewrite or make a new will for a testator. However, we can see the danger that without a segregation of funds that only oracular discernment can determine what is and what is not part of the testator's estate left to be passed to the remaindermen. As such, the life estate can become vitiated without intended fault of the life tenant—a situation which defeats and is inimical to the purpose of the creation of a life estate with a remainder. Therefore, we do give our judicial imprimatur to the maintenance of a separate account of the life estate assets given by the testator to Martha Turney Magruder · so it may be determined whether she is committing waste and what, if anything, is to pass to the remaindermen upon termination of the life estate.

▮ Finally, we find that respondent Ruth Magruder's guardian ad litem is not entitled to his attorney's fees from the testator's life estate. Attorney's fees are not an allowable item to any party, other than the executor, against an estate in a will construction contest where no trust is involved. *First Trust Co. v. Myers*, 239 Mo. App. 403, 188 S.W.2d 519 (1945). See also *St. Louis Union Trust Co. v. Kaltenbach*, 353 Mo. 1114, 186 S.W.2d 578 (1945). While a court is authorized to make an allowance out of an estate for the guardian ad litem, such allowance occurs only where there are no other funds available to pay such expenses. See *Tracy v. Martin*, 363 Mo. 108, 249 S.W.2d 321 (banc 1952); *St. Louis Union Trust Co. v. Kaltenbach, supra*. We note that there was evidence that Ruth Magruder possesses funds for paying the guardian ad litem fee. Respondents assert that despite the above rules, counsel fees are allowable from the fund at issue when

the dispute concerns the interpretation of ambiguous phrases or where the guardian's efforts are designed to result in real benefit to the estate. Neither situation is present here.

The judgment is reversed and the cause, remanded with directions to enter judgment in accordance with the views herein expressed regarding a separate accounting by Martha Turney Magruder of life estate assets received by her from the testator.

SIMEONE, P. J., and McMILLIAN, J., concur.